## UNITED STATES v. ATLANTIC REFINING CO. ET AL.

No. 210.  Argued April 22, 1959.—Decided June 8, 1959.

*Robert A. Bicks* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Hansen* and *Daniel M. Friedman.*

*David W. Peck* and *David T. Searls* argued the cause for appellees.  On the brief of appellees were *Arthur H. Dean, David W. Peck, Roy H. Steyer, Frederick L. Ballard, Jr.* and *Charles I. Thompson, Jr.* for Arapahoe Pipe Line Co., *Park Holland, Jr., Gentry Lee* and *Narvin B. Weaver* for Cities Service Pipe Line Co., *Llewellyn C.*

*Thomas* for Continental Pipe Line Co., *John J. Wilson,
R. L. Wagner* and *David T. Searls* for Great Lakes Pipe
Line Co., *Nelson Jones* and *Joseph J. Smith, Jr.* for
Humble Pipe Line Co., *Arthur H. Dean, David W. Peck,
Roy H. Steyer* and *Hugh H. Obear* for Interstate Oil Pipe
Line Co. et al., *Frank C. Bolton, Jr.* and *John E. McClure*
for Magnolia Pipe Line Co., *William Simon* for Planta-
tion Pipe Line Co., *Ben A. Harper* for Pure Oil Co., *Ham-
mond E. Chaffetz, Cecil L. Hunt* and *Frederick M. Rowe*
for Service Pipe Line Co., *William F. Kennedy* and
*George S. Wolbert, Jr.* for Shell Pipe Line Corp., *Joseph
P. Walsh, Nat J. Harben, Charles I. Thompson, Jr.* and
*Bynum E. Hinton, Jr.* for Sinclair Pipe Line Co., and
*John J. Wilson* and *O. J. Dorwin* for Texas Pipe Line
Co. et al.

Mr. Justice Black delivered the opinion of the Court.

The Elkins Act, 32 Stat. 847, as amended, 49 U. S. C.
§§ 41, 43, and the Interstate Commerce Act, 24 Stat. 380,
as amended, 49 U. S. C. § 6 (7), make it unlawful for
a common carrier to grant rebates to individual shippers
by any device whatsoever, or to discriminate in favor
of any shipper directly or indirectly. In 1941 the United
States brought a complaint against appellees and several
other major oil companies and their common carrier
pipeline subsidiaries claiming that the pipelines were
granting illegal transportation rebates to their shipper-
owners under the guise of paying dividends. Although
the Government charged that no dividends at all could
lawfully be granted in the same year in which a shipper-
owner sent products over a pipeline, the suit was settled
in late 1941 by a consent decree containing a provision
which allowed a shipper-owner to receive a dividend equal
to "its share of 7 percentum (7%) of the valuation" of
the common carrier pipeline's property. Any dividend

in excess of this figure, however, was forbidden.[1] That provision of the decree is before us for interpretation today.

From 1941 to 1957 appellees computed allowable dividends by taking 7% of the valuation of pipeline property and then giving each owner a proportion of this sum equal to the percentage of stock it owned. In 1957, however, the Government brought this suit against appellees claiming that the pipelines were giving, and the shipper-owners were receiving, dividends in excess of those allowed by the decree. The Government did not contest the valuation figures used, but argued, despite the language of the decree, that only a part of 7% of the valuation could actually be made available as dividends to stockholders. The total allowable "dividends," it claimed, would have to be shared between stockholders and creditors. The stockholder's (shipper-owner's) "share" of the carrier valuation, so the argument ran, was to be the proportion which stock-investment in the carrier bore to the carrier's total invested capital (including debt owed to third persons). Seven percent stockholder-dividends could only be computed out of this "share" of the sum, and could then be distributed to each shipper-owner in proportion to its individual stock interest. Only in this way, the Government contended, could the consent decree's aim of preventing disguised rebates be accomplished. For only in this way would dividends be limited to a "fair" sum: 7% of the current value of what each owner had invested in its subsidiary. The trial court rejected the Government's interpretation, and the United States brought a direct appeal under 32 Stat. 823, as amended, 15 U. S. C. § 29, 49 U. S. C. § 45.

---

[1] This consent decree is discussed in detail in Hearings, Antitrust Subcommittee of the House Committee on the Judiciary, 85th Cong., 1st Sess., Part I.

On consideration of the language and the history of this decree we agree with the trial court. If the decree had meant to limit dividends to 7% of the current value of a parent company's actual investment in a subsidiary, as the Government claims, one can hardly think of less appropriate language in which to couch the restriction. Admittedly, by reading the word "share" to refer to a proportion of total capitalization rather than to the percentage of stock owned by a parent company, the language can be made to support the United States' contention.[2] But that is surely a strained construction, and cannot be reconciled with the consistent reading given to the decree, by both the United States and appellees, from the date it was entered until 1957—about 16 years.

In 1942, less than a year after the decree was issued, the United States consented to a supplemental order affecting one of the pipeline companies. This order approved a plan of recapitalization for the pipeline which would at least have been highly suspect under the reading the Government today gives the decree. Significantly the supplemental order, which was agreed to by the official who had represented the Government in drafting the original decree, expressly stated that the plan did not violate that judgment.

There are also other indications that the Government's interpretation of the decree did not, originally, differ from

---

[2] Assuming a carrier has an I. C. C. "valuation" of $10,000,000, $2,000,000 of which represents stock investments of $1,000,000 by each of two shipper oil companies, and $8,000,000 of which represents debt because of money borrowed by the carrier from others, on the appellee-companies' interpretation of the decree, each of the two shipper-owners would be entitled to "dividends" of one-half ($1,000,000/$2,000,000) of 7% of $10,000,000 or $350,000. On the Government's new interpretation instead, each shipper-owner's "share" would be one-tenth ($1,000,000/$10,000,000) of 7% of $10,000,000 or $70,000, this being 7% of each one's actual investment of $1,000,000 in the company.

the one appellees urge today. For example, the 1941. decree required annual reports from each pipeline showing total earnings available to owners or stockholders and actual dividends paid. For 16 years the reports made by the pipelines indicated that the dividends were not computed on the basis of 7% of the current value of the owners' investment but on the total valuation of the carriers' properties. For that 16 years the Government accepted this interpretation without challenge. Yet today it renounces this long-standing acquiescence and claims that the decree imposed limits it had not previously sought to enforce.

The Government contends that the interpretation it now offers would more nearly effectuate "the basic purpose of the Elkins and Interstate Commerce Acts that carriers are to treat all shippers alike." This may be true. But it does not warrant our substantially changing the terms of a decree to which the parties consented without any adjudication of the issues.[3] And we agree with the District Court that accepting the Government's present interpretation would do just that. Cf. *Hughes* v. *United States,* 342 U. S. 353.

We do not decide the case on any question of laches or estoppel, nor do we comment on any possible modifications of the decree which might appropriately be made under Clause X of the judgment, which continues the jurisdiction of the District Court. We merely hold that where the language of a consent decree in its normal meaning supports an interpretation; where that interpretation has been adhered to over many years by all the parties, including those government officials who drew

---

[3] The consent decree reads: "[A]ll parties hereto [have] severally consented to the entry of this final judgment herein without trial or adjudication of any issue of fact or law herein and without admission by any party in respect of any such issue and in final settlement of all claims herein in issue. . . ."

up and administered the decree from the start;[4] and where the trial court concludes that this interpretation is in fact the one the parties intended, we will not reject it simply because another reading might seem more consistent with the Government's reasons for entering into the agreement in the first place. Accordingly, the judgment below is

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE CLARK and MR. JUSTICE HARLAN took no part in the consideration or decision of this case.

---

[4] Cf. *Fawcus Machine Co.* v. *United States,* 282 U. S. 375, 378; "contemporaneous construction by those charged with the administration of the act . . . are . . . entitled to respectful consideration, and will not be overruled except for weighty reasons."