**Harry Walter VOEGE et al.,
Plaintiffs,**

v.

**Frederick W. ACKERMAN et al.,
Defendants.**

**No. 70 Civ. 5776.**

United States District Court,
S. D. New York.

May 9, 1975.

---

Charles Trynin, New York City, Attorney for Plaintiffs, Seward & Kissel, New York City, Attorneys for Defendants Armour and Company and The Greyhound Corporation, Lester Kissel, New York City, of Counsel.

Lovejoy, Wasson, Lundgren & Ashton, New York City, Attorneys for Defendant General Host Corporation, Edwin E. McAmis, New York City, of Counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is a motion, upon consent of the parties to this action, for an order (1) that the action be conditionally maintained as a class action, and (2) approving a settlement for the benefit of the class.

The action is one of a number that followed in the wake of a battle for control of Armour and Company. The two contending forces were General Host Corporation and Greyhound Corporation. The factual background of their activities prior to the events which gave rise to this action may be found in Armour & Co. v. General Host Corp.[1]   Greyhound

---

1.   296 F.Supp. 470 (S.D.N.Y.1969).

eliminated General Host as a contender when, on May 14, 1970, the two corporations entered into an agreement whereby Greyhound acquired all of General Host's shares of stock in Armour and Company. For each share of its Armour stock, General Host received cash, notes and Greyhound stock of an aggregate value of $46.64, plus 1⅙ Greyhound warrants (rights to buy Greyhound stock for ten years at the price of $23.50). Greyhound then made an offer to the remaining Armour shareholders to merge Armour with a Greyhound subsidiary by an exchange of 3.25 shares of Greyhound stock for each share of Armour tendered. The merger became effective on December 28, 1970, when the 3.25 Greyhound shares at a value of $49.56 were exchanged for each Armour share.

The agreement whereby Greyhound acquired the Armour shares held by General Host provided that Greyhound would give minority Armour shareholders at least the same value Greyhound gave General Host. This litigation and its proposed settlement centers about that commitment.

Plaintiffs commenced this action on December 31, 1970, three days after the effective date of the merger, against Armour, Greyhound, General Host and certain of their officers and directors on behalf of themselves and all other Armour stockholders as of the close of business on December 28, 1970. In their first cause of action (the class count),[2] plaintiffs allege violations of the Securities Act of 1933 and the Exchange Act of 1934 in that the merger proxy statement contained material misstatements and omissions as to the value of the consideration paid by Greyhound to General Host for its Armour shares. Plaintiffs further allege that defendants violated the Greyhound-General Host agreement that Armour minority shareholders would receive no less than Gen-

eral Host received for its shares. Thus the prime issue is whether the 3.25 Greyhound shares received by Armour minority shareholders were equal in value to the cash, notes, stock and warrants received by General Host. This is governed by the value attributed to the Greyhound warrants and the date selected for their valuation, matters that are sharply contested by the litigants.

Plaintiffs' position is that the evaluation date should be May 14, 1970, the date General Host exchanged its Armour shares with Greyhound, when they contend the warrants had a value of $3 each. At $3 per warrant, plus cash, notes and Greyhound stock, then valued at $46.64, plaintiffs concluded that the consideration paid to General Host was $50.14 (1⅙ times $3, plus $46.64). By this calculation, General Host received $0.58 per share more than the $49.56 received by the minority Armour shareholders.

The defendants, on the other hand, dispute the $3 per warrant valuation as of May 14, 1970, since as of that date the warrants had not been actively traded for a reasonable time. They further contend that the 3.25 shares received by the minority shareholders should be valued as of December 28, 1970, the date when the merger became effective, and that on this basis the class members received more per share than General Host.

## THE SETTLEMENT AGREEMENT

The parties now propose to settle their differences upon the assumption that the warrants had a value of $2.75 on May 14, 1970. Based thereon, the amount received by General Host on that date per Armour share was $49.83 in cash, stock, notes and warrants. Further, the parties agreed that the 3.25 shares received by the minority Armour shareholders shall be taken at $49.56, their market value on the effective mer-

2. Plaintiffs also asserted a second cause of action, a derivative count, which this court

dismissed. Voege v. Ackerman, 364 F.Supp. 72 (S.D.N.Y.1973).

ger date, December 28, 1970. Accordingly, a unit loss of $0.27 per share was allegedly sustained by the minority shareholders.

The proposed settlement provides that Greyhound will establish a fund of $241,345.71, representing $0.27 per share for the 893,873 outstanding Armour shares as of the date of the Greyhound-Armour merger. This sum, however, is subject to deductions for allowance of attorneys' fees at a maximum of $40,-000 (subject to approval by this court), and an additional $55,000 (estimated) administrative expenses of the settlement in sending out notices, receiving and passing upon claims, leaving a maximum per share recovery of $0.164 per share. In the event attorneys' fees and administrative expenses are less than the total amount of the deductions, the balance is to be returned to Greyhound rather than being made available to the class members.

Class members are entitled to participate in the distribution of the fund as follows:

(1) all class members who did not surrender their Armour stock pursuant to the merger and held these shares until March 15, 1974 (the settlement date) shall, upon tendering their Armour shares for 3.25 Greyhound shares, have a recognized loss of $0.164 per Armour share;

(2) all class members who exchanged their Armour shares for the Greyhound shares in the merger and thereafter sold the Greyhound shares before March 15, 1974 at a gross sales price of less than 15⅜ (the price Greyhound sold on the merger date, December 28, 1970) shall have a recognized loss equal to the difference between 15⅜ and the gross sales price of such Greyhound shares, but not to exceed $.0505 ($0.164 divided by 3.25 shares);

(3) all other class members shall have no recognized loss. As to this group the parties state that as of March 15, 1974, the settlement date, Greyhound shares were selling at more than 15⅜, the price Greyhound sold for on the merger date.

Notice of the proposed settlement and a hearing thereon was sent to all the class members. Nineteen class members, representing about 750 shares of Armour stock, have "opted out." No class member opposed the settlement either in writing or at the hearing.

■ The requirements of Rule 23 of the Federal Rules of Civil Procedure being satisfied, the action is afforded class action treatment under Rule 23 (b)(3) for the purposes of the settlement, and the movants' application in this respect is granted.

## APPROVAL OF THE SETTLEMENT

■ The factors to be considered by the court in passing upon the fairness and reasonableness of a proposed settlement of a class action suit pursuant to Rule 23(e) of the Federal Rules of Civil Procedure are well defined.[3] While the court is called upon to exercise an independent judgment in evaluating the settlement terms, the settlement hearing should not be transformed into an abbreviated trial. The court must guard against substituting its

3. City of Detroit v. Grinnell Corp., 495 F.2d 448, 462–63 (2d Cir. 1974); Young v. Katz, 447 F.2d 431 (5th Cir. 1971); Norman v. McKee, 431 F.2d 769 (9th Cir. 1970), cert. denied sub nom. Security Pac. Nat'l Bk. v. Myers, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811 (1971); Blank v. Talley Industries, Inc., 64 F.R.D. 125, 129 (S.D.N.Y.1974); Levin v. Mississippi River Corp., 59 F.R.D. 353, 361 (S.D.N.Y.), aff'd sub nom. Wesson v. Mississippi River Corp., 486 F.2d 1398 (2d Cir.), cert. denied, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973).

judgment for that of the parties who presumably arrived at a good faith compromise after arms length bargaining.

The basic issue presented by this litigation is whether Greyhound fulfilled its obligation that minority Armour shareholders would receive for their shares at least the same value that General Host received for its Armour shares. As already noted, the determination of this issue depends upon the value attached to the Greyhound warrants and the date of their valuation. Experts relied upon by the litigants differ—a not unusual situation. Defendants' financial expert is of the view that the value of the Greyhound warrants on May 14, 1970 could only be determined with certainty if they had been actively traded for a reasonable period—in short, that only the market can fix the value.[4] Plaintiffs' expert, applying other tests and relying upon financial analyses, differed. To resolve this conflict, the parties, based on the trading price of $2.75 per warrant in 1973 when the warrants were actively traded and Greyhound was selling at $14\frac{1}{8}$, the same price it was selling at when General Host received its warrants in the exchange on May 14, 1970, agreed upon an assumed warrant value of $2.75. This results in an assumed underpayment of $0.27 per Armour share, subject to deductions referred to, so that the maximum individual recovery per share is $0.164.

█ There can be no certainty of judgment as to the value of the warrants on May 14, 1970 and a trial as to this issue would bring forth the usual battle of experts. In order to prevail upon a trial on the merits, plaintiffs would have to overcome the difficult problem of valuation, as well as the substantial question previously raised by defendants whether the members of the class in fact suffered any loss.[5] Given these obstacles, the court deems the settlement fair and reasonable and therefore it is approved.[6]

## ATTORNEYS' FEES

Plaintiffs' counsel has requested an allowance of $40,000 for counsel fees, including disbursements. The total settlement fund is $241,345.71, which reflects the $0.27 per share for the 893,-873 Armour shares outstanding and held by the class members immediately prior to the merger on December 28, 1970. However, the deductions already referred to result in a net recovery of $0.-164 per share, which is available only to those class members who come within subclasses (1) and (2), defined above.

With the small sums involved for many shareholders, it is doubtful that all those entitled to file claims will do so. Additionally, it is not now known how many shareholders are within subclasses (1) and (2). Thus at this point the extent of the benefit to the class cannot be determined with any degree of exactitude. It may be that so few will receive payment (with the unused portion of the settlement fund going back to Greyhound) that the benefits to the class will be "miniscule"[7] and that the evaluation of fees may have to be based principally upon the "therapeutic" value of this type of action.[8]

---

4. *Cf.* Levin v. Mississippi River Corp., 59 F.R.D. 353, 370 (S.D.N.Y.1973).

5. Voege v. Ackerman, 364 F.Supp. 72, 73 (S.D.N.Y.1973).

6. The Securities and Exchange Commission, which was involved in litigation concerning certain General Host, Armour and Greyhound transactions leading up to the Armour-Greyhound merger, was invited to offer its views on the proposed settlement, but declined to do so on the ground that the instant case presented different issues from those involved in its action.

7. *See* Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A., 55 F.R.D. 26, 30 (S.D.N.Y. 1972).

8. *See* Mills v. Electric Auto-Lite Co., 396 U.S. 375, 389–97, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423

Under the circumstances, the fee determination will be reserved until all claims of shareholders entitled to participate in the settlement have been filed and determined.

(1964) ; Wechsler v. Southeast Properties, 506 F.2d 631 (2d Cir. 1974) ; Grace v. Ludwig, 484 F.2d 1262 (2d Cir. 1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1610, 40 L.Ed.2d 110 (1974) ; Rosenblatt v. Northwest Airlines, Inc., 435 F.2d 1121, 1124 (2d Cir. 1970).