**Alan L. SPIELMAN, Appellant,**

v.

**GENERAL HOST CORPORATION et al., Defendants,**

**General Host Corporation et al., Appellees.**

**No. 710, Docket 75-7538.**

United States Court of Appeals, Second Circuit.

Argued March 24, 1976.

Decided July 12, 1976.

Melvyn I. Weiss, New York City (Jared Specthrie, Aaron M. Fine, Daniel L. Goldwasser, Milberg & Weiss, New York City, of counsel), for appellant.

Edwin E. McAmis, New York City (Daniel J. Sullivan, New York City, on the brief), Lovejoy, Wasson, Lundgren & Ashton, New York City, for appellees General Host, Ashton, Alden, Binns, Scott and Hamilton.

Milton Gould, Shea, Gould, Climenko, Kramer & Casey, New York City (Harvey J. Goldschmid, New York City, of counsel), for appellee Allen & Co., Inc.

George M. Duff, Jr., Holtzmann, Wise & Shepard, New York City, for appellee Allen & Co.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

PER CURIAM:

In this appeal from a judgment denying liability of a tender offeror for a claimed misleading omission in the offer prospectus, we affirm on the opinion below of the United States District Court for the Southern District of New York, Edward Weinfeld, Judge, *Spielman v. General Host Corp.,* 402 F.Supp. 190 (S.D.N.Y.1975). This tender offer case presents the unusual, if not unique, situation where the "total mix" of communications to, and knowledge of, shareholders of the target company renders harmless a potentially misleading omission

in the prospectus circulated by the tender offeror.[1] *See Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 362–63 n. 14, 377 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 103 (10th Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971); *Butler Aviation International, Inc. v. Comprehensive Designers, Inc.*, 425 F.2d 842, 844 (2d Cir. 1970). It is not the typical case where a tender offeror's prospectus fails to disclose material information about itself, the offeror company, to the detriment of the offeree stockholders. The principal omission from the body of the prospectus here [2] was that the *target company's* board of directors was elected for staggered terms of three years and subject to cumulative voting, with the result that these obstacles to the offeror's immediate assumption of operating control after acquisition of a controlling stock interest [3] were not prominently set forth for consideration by the prospectus readers.

But appellant's class, stockholders of the target company, were, as Judge Weinfeld makes clear, "presumably" aware of their *own* company's staggered board and cumulative voting procedures. 402 F.Supp. at 201. The stockholders were also reminded by their own management in materials contesting the tender offer that their board was "classified and elected for three year terms." Within two weeks of the effective date of the prospectus, and again four days before expiration of the tender offer, the target company's management also sent a proxy statement, and supplement thereto, advising the target company stockholders that six three-year directorships on the 17-member board of directors were up for election. As Judge Weinfeld accurately put it, "Far from being misled, [the target company] shareholders were thus inundated with information concerning *their own corporation's* staggered board and its cumulative voting provision." 402 F.Supp. at 201 (emphasis added).

But this, we make clear, is not a case where the "total mix" of communications alone is relied upon to justify a misleading proxy statement. Generally, the "total mix" would be insufficient to compensate

---

1. The following two paragraphs were inserted by amendment to the prospectus under the caption "Other Aspects of the Exchange Offer."

   General Host intends to act promptly both before and after consummation of the Exchange Offer to obtain control of the board of directors and management of Armour. In this connection it may engage in the solicitation of proxies for the election of directors of Armour and other matters, both at the February 21, 1969 annual meeting of Armour and Company and otherwise.

   General Host may find it desirable *upon consummation of the Exchange Offer* to propose to stockholders of the relevant corporations a merger or consolidation of it or its present or future subsidiaries with Armour or certain of its subsidiaries, or *General Host may find it desirable to dispose of portions of the assets presently held by it or by Armour. If no such merger or consolidation occurs, and if General Host has not acquired more than 80% of Armour's Common Stock which would allow it to enter into tax-saving arrangements, General Host may find it necessary or desirable to increase the dividend paid on common stock by Armour, or to incur new indebtedness or issue additional equity securities.*

(Emphasis added.) We agree with appellant that this conveyed the impression that General Host, the tender offeror, would be able to satisfy its cash flow requirements out of the target company (Armour & Co.) assets, implying as it did that General Host would gain operating control of Armour as a result of the exchange offer and that operating control would permit General Host to increase Armour's dividends and sell Armour's assets, thereby benefiting General Host.

2. There was explicit disclosure in the prospectus that the target company had a staggered board and cumulative voting, but this was in an "Annex" or appendix to the prospectus. Even though reference to this Annex was made under the heading "Information Concerning Armour," we do not, and the district court did not, rely on this disclosure in and of itself to cure the misleading impression conveyed in the body of the prospectus, note 1 *supra*.

3. The necessity for obtaining operating control was to provide cash flow to meet, *inter alia*, interest requirements on the offeror's substantial indebtedness, including but not limited to its debentures issued in exchange for the target company's stock.

for omissions in the prospectus since an investor is all too apt to look upon those communications as self-serving and to consider the prospectus as a more objective, self-contained statement upon which he may justifiably rely to make an informed investment decision. The "mix" in this instance, however, pertains to a subject—the target company's own staggered board and cumulative voting—of which its own stockholders were *presumably aware*, if they were aware of anything. In this light, Judge Weinfeld's decision becomes unassailable. *See Chris-Craft Industries, Inc. v. Piper Aircraft Corp., supra*, 480 F.2d at 369.

This is not to say that a shareholder will be presumed to know all the by-law provisions of the corporations in which he owns stock so as to relieve an offeror from discussing relevant provisions in its prospectus. In this specific instance, however, proxies for voting for the board of directors and other information concerning the board had been circulated to shareholders shortly before the effective date of the tender offer. The proxy statement was calculated to alert shareholders to the terms of service of directors to be elected and the method of cumulative voting. In taking the affirmative act of voting, shareholders were likely to take special notice of these facts. In these circumstances, it is fair to say that the shareholders can be presumed to have been aware of the provisions at issue or that the shareholders were unlikely to have been misled by the offeror's failure to discuss the provisions more thoroughly.

Affirmed.