**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**GENERAL HOST CORPORATION et al., Defendants.**

**No. 73 Civil 275.**

United States District Court, S. D. New York.

Aug. 29, 1977.

---

12. Furthermore, New England's argument really sounds in warranty and § 8–306(2) limits the scope of Town's warranties.

Thomas J. Loughran, Branch Chief, Richard B. Steinkamp, Atty., S. E. C., Washington, D. C., for plaintiff; William D. Moran, Regional Administrator, S. E. C., New York City, of counsel.

Holtzmann, Wise & Shepard, George M. Duff, Jr., Robert H. Werbel, of counsel; Harvey J. Goldschmid, Shea, Gould, Climenko & Casey, New York City, Milton S. Gould, Arnold S. Jacobs, New York City, of counsel; for defendants.

EDWARD WEINFELD, District Judge.

This is a motion by Allen & Company, Inc. ("Allen"), a defendant in this action, for the return of a $300,000 interest-bearing trust fund established by it pursuant to the terms of a final consent judgment. Hopefully, the determination of this motion, opposed by the plaintiff Securities and Exchange Commission ("SEC"), will be the closing and final chapter of the various litigations which followed in the wake of the contest for control of Armour and Company ("Armour") almost nine years ago. The background facts of that contest are set forth in the related cases of *Armour and Co. v. General Host Corp.*[1] and *Spielman v. General Host Corp.*[2] and familiarity therewith is assumed.

For purposes of this motion, it is sufficient to note that Allen served as General Host Corporation's investment banker and co-dealer manager during the take-over contest and the related partnership of Allen & Co. served as broker-dealer. After an investigation lasting nearly four years, on January 17, 1973, the Securities and Exchange Commission brought this action against, *inter alia*, Allen and Allen & Co., charging them with violations of various

---

1. 296 F.Supp. 470 (S.D.N.Y.1969).

2. 402 F.Supp. 190 (S.D.N.Y.1975), aff'd, 538 F.2d 39 (2d Cir. 1976). *See also Voege v. Ackerman*, 67 F.R.D. 432 (S.D.N.Y.1975).

provisions of the Securities Act of 1933,[3] and the Securities Exchange Act of 1934 (the "Exchange Act")[4] and seeking injunctive relief and disgorgement of profits alleged to have been unjustly obtained. Allen denied the material allegations of the amended complaint insofar as it was charged with illegal conduct or any violation of the Securities laws. Soon after the action was filed, the SEC and Allen began settlement discussions and the first draft of a settlement agreement was prepared by the SEC; over two years and five drafts later, a final judgment was consented to on March 10, 1975 and approved by the Court.[5]

This consent judgment which, given the long negotiations and many drafts preceding the final product, is assumed to be in language carefully chosen by the parties, contains four sections, preceded by a preamble which sets forth Allen's consent as "having been made solely for the purposes of settlement and without admitting or denying any matters arising out of the complaint." It specifically acknowledges that there had been no trial and no findings of fact or adjudication with respect to any matter alleged in the amended complaint. Section I of the agreement enjoins Allen from violating: (a) Section 10(b) of the Exchange Act as amended and Rules 10b–6 and 10b–13 thereunder;[6] and (b) Section 13(d) of the Exchange Act and Rules 13d–1 and 13d–2 thereunder.[7]

Section II of the final judgment provided for the $300,000 interest-bearing trust account which is at issue here. It reads:

> Allen & Company Incorporated [shall] pay or cause to be paid into an interest bearing trust account the aggregate sum of $300,000.00, such amount to be held in trust in accordance with the terms of the agreement creating such trust account for the benefit of any claimants who are awarded money damages against Allen & Company Incorporated, or any officers, directors, agents, servants or employees, as a result of a judgment entered against one or more of Allen & Company Incorporated or such persons (including a judgment entered pursuant to a settlement agreed upon by Allen & Company Incorporated), in any lawsuit presently pending (including *Spielman v. General Host Corporation, et al.*, . . . ) or hereafter brought and which relates to the allegations or transactions regarding the securities of General Host and Armour referred to in the Complaint for Injunction in this matter.

> Any funds remaining after termination of such trust account shall be distributed in such manner as hereafter agreed upon between Plaintiff and Allen & Company Incorporated, subject to the approval of the Court.

The *Spielman* action referred to above was a class action brought on behalf of holders of Armour common stock or convertible debentures against General Host, certain of its directors and Allen, which in large measure tracked the material allegations of the SEC complaint in this action. Following a trial, the *Spielman* complaint was dismissed and judgment entered on the merits in favor of Allen as well as of other

---

3. Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

4. Sections 9(a)(2) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(a)(2), 78n(e), Section 10(b) of that Act, 15 U.S.C. § 78j(b), and Rules 10b–5 and 10b–6 thereunder, 17 C.F.R. §§ 240.10b–5, 240.10b–6.

5. After initial argument of the motion, in view of conflicting statements in affidavits submitted by attorneys for the respective parties who had played a role in the negotiation of the settlement and drafts of the agreement, including the final consent judgment, the Court conferred with counsel as to the desirability of a hearing in order to take the testimony of the lawyers under oath. The parties, however, agreed that the motion was ripe for disposition upon the basis of the affidavits and the record. At that conference, the SEC requested and was granted leave to submit additional affidavits but it did not do so and rested upon those previously filed.

6. 15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b–6, 240.10b–13.

7. 15 U.S.C. § 78m(d); 17 C.F.R. §§ 240.13d–1, 240.13d–2.

defendants.[8] No other action is pending and the parties are in accord that no other law suit is likely to be filed and thus there are "no claimants who are awarded money damages" within the above provision.[9] Accordingly, the $300,000 fund is subject to distribution under Section II of the consent judgment.

[1] Prior to the instant motion for the return of the fund to Allen, the parties did attempt to reach an agreement as to distribution but failed to do so. They acknowledge that, since they have not agreed, this Court has the unlimited power to direct the distribution of the fund pursuant to Section IV of the final judgment, which provides that the Court "retains jurisdiction of this action for the purpose of changing, amending, supplementing or enforcing this decree upon the application of either party thereto." They disagree, however, as to what that distribution by the Court should be: the SEC contends that in no event should the fund be returned to Allen; Allen argues that any other disposition would be unjust since it would be in the nature of a penalty.

The clause in question appears to state that while the parties at the time of the consent judgment had not then agreed upon the fund's future distribution, they contemplated such agreement in the event there were no claimants entitled thereto under the *Spielman* or any other law suit; however, there is no specific alternative provision in the event they did not agree upon distribution, as in fact they have not. There is nothing in the clause that would give guidance to the Court as to what the parties contemplated in the event of lack of agreement—certainly, there is nothing which even remotely suggests a distribution to charitable organizations or that the fund not revert to Allen.

Notwithstanding, the SEC contends that the Commission staff who negotiated and drafted the contract and counsel for Allen intended and agreed "that the language of Section II . . . means that the corpus of the trust account, including principal and interest, would not revert to Allen Inc. but rather would be paid to a charity selected by Allen Inc." If that is what they intended, which Allen disputes, these experienced and knowledgeable SEC staff lawyers and those representing Allen certainly selected odd language to express their simple purpose that the unexpended funds would go to charity and in no event were to revert to Allen. As the Supreme Court observed in a somewhat similar situation, "if the parties had intended the meaning urged by the [SEC], 'one could hardly think of less appropriate language.' "[10]

Perforce, to sustain its contention that the language in Section II was understood by the parties to mean that, in the absence of claimants entitled thereto, the fund was to be distributed to charitable organizations, the SEC refers to positions advanced by the parties during the more than two-year negotiation period, to various drafts of agreements and correspondence and engages in a dialectical discussion of the dictionary meanings of "distribute" and "revert". However, this merely reflects that in the course of settlement negotiations there were proposals and counter-proposals with the not unusual give and take on controverted items. And while it is true that earlier drafts contain references to the distribution of funds to charities (at one stage to be designated by the SEC and at another by Allen), changes were made as negotiations continued. As already noted, the final consent judgment makes no reference to any charitable distribution.

8. *Spielman v. General Host Corp.*, 402 F.Supp. 190 (S.D.N.Y.1975), aff'd, 538 F.2d 39 (2d Cir. 1976).

9. Since the operative facts upon which the various charges against the defendants occurred from August, 1968 through February, 1969, it would appear that all claims are barred under applicable statutes of limitation. *See* section 13 of the Securities Act of 1933, 15 U.S.C.

§ 78m; section 9 of the Exchange Act, 15 U.S.C. § 78i; *Klein v. Shields & Co.*, 470 F.2d 1344 (2d Cir. 1972).

10. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975) *quoting United States v. Atlantic Refining Co.*, 360 U.S. 19, 22, 79 S.Ct. 944, 3 L.Ed.2d 1054 (1959).

Moreover, despite the SEC's suggestion that this dispute is of recent vintage, the fact is that within one week after the judgment was consented to, disagreement developed as to the fund's disposition in the event the *Spielman* plaintiffs or any other group were not entitled to its proceeds.[11] As their divergent positions emerged when the ink was barely dry on the consent judgment, the lawyers were less than candid with the Court in failing then to bring the dispute to its attention. The Court had entered the judgment based upon an implicit representation that no issues were unresolved and that the consent judgment reflected a definitive and final disposition warranting the entry of judgment under Rule 54(b) of the Federal Rules of Civil Procedure. Instead, in effect the matter was swept under the rug, perhaps in the belief that a disposition in the *Spielman* litigation would absorb the funds and thus resolve the dispute. But that was not to be and now almost three years after the entry of judgment the Court is called upon to resolve the issue.

The lawyers for both parties failed to live up to the full measure of their responsibility to the Court and to their clients. In end result the SEC failed in its duty to protect the public interest, if, as it now contends, the fund was intended as disgorgement of monies derived by Allen in connection with the Armour battle for control during which Armour's security holders allegedly were overreached—a claim vigorously denied by Allen. In any event, the fund was specifically described as established "for the benefit of any claimants who are awarded money damages" against Allen in a civil action; in terms of remedial relief, there is no claim that any charitable organization owned Armour Stock or was even remotely injured by Allen's conduct or for that matter by the alleged wrongful conduct of any other defendant.

■ Finally, the SEC's assertion that the account is funded with monies derived in violation of the Securities Acts has neither been admitted nor established. As already noted, the preamble in the consent judgment recites that Allen agreed thereto "without admitting or denying any of the allegations of the amended complaint" and "that there ha[d] been no finding of fact or . . . adjudicated matter with respect to any matter alleged in or arising out of the amended complaint . . .." In considering the disposition of the fund, the Court must accept the consent decree "as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation." [12]

■ This Court is unaware of any statute, authority or principle that permits it, the SEC or any governmental agency to direct that a litigant's funds be distributed to charitable organizations, however laudable their purposes may be. True, a litigant, while denying liability, may desire to buy his peace to avoid expensive, disruptive and burdensome litigation and agree to make a contribution to charity, but that is a consensual matter. Absent such consent neither this Court nor the SEC has the power to force such a contribution upon a litigant. Accordingly, the Court directs the return of the fund to Allen.

SO ORDERED.

---

11. In an exchange of correspondence which began even before the Court had signed the final judgment, the SEC lawyers contended that the fund "under any circumstances" was not to revert to Allen; the latter's lawyer, emphasizing that the wording of the provision was SEC's own suggested language, adamantly contended that ". . . neither [the SEC] nor our own client can cause the disposition of the

. . . funds without the consent of the other. . . .."

12. *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236–37, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).