UNITED STATES of America, Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, Defendant.

In the Matter of the Application of SALEM MEDIA OF CALIFORNIA, INC., et al., Applicants,

For a License for their Radio Broadcasting Stations.

Civ. A. No. 13–95 (WCC).

United States District Court, S.D. New York.

June 6, 1990.

As Amended June 18, 1990.

As Amended Nunc Pro Tunc Sept. 12, 1990.

Wiley, Rein & Fielding, Washington, D.C., Bruce C. Joseph, Craig A. Johnson, of counsel, Bondy & Schloss, New York City, Joel S. Forman, of counsel, for applicants.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Allan Blumstein, of counsel, and Bernard Korman, General Counsel for ASCAP, New York City, Richard Reimer, of counsel, for American Soc. of Composers, Authors and Publishers (ASCAP).

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Salem Media and numerous other commercial radio stations ("the applicants") applied to this Court pursuant to Section IX(A) of the Amended Final Judgment (the "Decree") for a determination of reasonable license fees for the use of the music in the copyrighted repertory of the American Society of Composers, Authors and Publishers ("ASCAP"). *See United States v. ASCAP*, 1950–51 Trade Cas. (CCH) ¶ 62,595 (S.D.N.Y.1950). ASCAP moved to dismiss the application of 152 of the applicants. The parties stipulated to direct the motion to Magistrate Dolinger who, after a full hearing, issued a Report and Recommendation (the "Report") on December 21, 1989 that the motion be granted in part and denied in part.

Applicants now object to the Report's recommendation that the Court grant summary judgment dismissing 139 of the applicant stations from this proceeding, claiming that these stations are entitled to remain in this action to establish a per program license that satisfies the Decree. For the reasons stated below, the objections are overruled and the Report is approved in its entirety.

## BACKGROUND

In 1982, a number of commercial radio stations instituted an Section IX(A) rate-setting proceeding, *In the Matter of the Application of WGN of California, Inc., et al. ("WGN")*. The application was made on behalf of approximately 2000 radio stations, which were represented by the so-called "All–Industry Committee." While the *WGN* proceeding was pending, many radio stations whose existing licenses were due to expire entered into license extension agreements with ASCAP. Basically, these agreements maintained the status quo but provided for future retroactive adjustment of the stations' license fees in accordance with the outcome of the *WGN* proceeding. These agreements also contained a provision stating that the licensee waived its right to apply either to ASCAP or to the Court for terms other than those set in the *WGN* action. The agreements provided that they could be terminated at any time by either party upon three months' notice.

After extensive negotiations, ASCAP and the All–Industry Committee reached a rate agreement, which was approved by this Court in August 1986. The settlement agreement established blanket and per-program licensing fees for the period January 1, 1983 through December 31, 1990. Following approval of this agreement, ASCAP offered comparable licenses to other radio stations that had applied for licenses. Most of the applicants in the current proceeding signed licenses incorporating the *WGN* terms, including the termination date of December 31, 1990. Others, however, continued to operate under the extension

agreements until those agreements were terminated by ASCAP in June 1988.

The present proceeding was commenced on June 30, 1988. The applicants, comprising 205 radio stations (*See* Appendix to the Report), sought a determination of reasonable fees for "the periods commencing November 1, 1982, for some of the Applicant stations and January 1, 1983, for others," although it did not specify which stations applied for each period. ASCAP moved to dismiss as to 139 stations which had signed licenses in the form approved in the *WGN* proceeding. Although these stations were not parties to the *WGN* proceeding, at its termination they were offered and accepted license agreements embodying the *WGN* terms for the period January 1, 1986 through December 31, 1990. ASCAP argued before the Magistrate that since these stations signed license agreements for the relevant period, they cannot seek a redetermination of the fees in this Court. The stations responded that they were induced to sign the agreements by misrepresentation and fraud on the part of ASCAP, entitling them to rescind the agreements and substitute a court determination of reasonable fees.[1]

Treating the motion as one for summary judgment and applying the proper standard as to whether a genuine question of material fact exists under New York and federal law,[2] Magistrate Dolinger found that the applicants failed to sustain their claim for rescission of the contract based on fraud or misrepresentation. Magistrate Dolinger

also ruled that as to the post–1990 period, the Court lacked jurisdiction because applicants had never requested a post–1990 license.

## DISCUSSION

### I. Standard of Review

Magistrates are empowered by statute to preside over pretrial matters upon being appointed by a district judge. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Rule 72(b), Fed.R.Civ.P., instructs a district court judge to "make a *de novo* determination ... of any portion of the magistrates's disposition to which written objection has been made." *See also* 28 U.S.C. § 636(b)(1); *Mokone v. Kelly*, 680 F.Supp. 679 (S.D.N.Y.1988); *Nelson v. Smith*, 618 F.Supp. 1186 (S.D.N.Y.1985). After conducting its review, the court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The rule also permits the court to accept any portion of a magistrate's disposition to which no objection has been made as long as it is not "erroneous on the face of the record." Fed.R.Civ.P. 72, Notes of Advisory Committee on Rules (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)).

A *de novo* determination does not require a second evidentiary hearing, Fed.R. Civ.P. 72, Notes of Advisory Committee on

---

1. Magistrate Dolinger also considered ASCAP's motion to dismiss the five remaining stations. ASCAP alleged that the stations had waived their right to seek a court-determined license fee when they signed extension agreements containing language waiving an independent rate determination. ASCAP insisted that the waiver provision continues to bar the licensees from applying to the court for a fee determination for any period covered by the *WGN* agreement, despite ASCAP's June 1988 termination of the extension agreements. The applicants argued that the waiver provision lapsed when the extension agreement was terminated, and that they are therefore free to seek a court determination of fees for the post-termination period.

   The Magistrate found that a question of material fact existed as to whether applicants who had signed extension agreements containing a

waiver clause were bound by the *WGN* rate where ASCAP exercised its right to terminate the extended license. Because reasonable persons could differ as to the meaning of the relevant contract provision, summary judgment was denied. Because this portion of the Report is not objected to and because the Magistrate's determination is not "erroneous on the face of the record," *see* Fed.R.Civ.P. 72, Notes of Advisory Committee on Rules (citation omitted), this Court accepts the Magistrate's recommendation to deny summary judgment as to the stations who signed extension agreements.

2. In what he termed a "*sua sponte*" choice of law determination, Magistrate Dolinger applied federal law, incorporating New York law and compatible common-law principles from other jurisdictions, to the motion presented.

Rules (citing *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980)), but may be based solely upon the record. Fed.R.Civ.P. 72(b). In making its determination, this Court has reviewed Magistrate Dolinger's Report, applicants' objections to the Report, ASCAP's opposition and applicants' reply.

Applicants attack the Magistrate's Report on two grounds. They argue that in dismissing the application as to 139 stations, the Magistrate (1) failed to subject ASCAP's conduct in soliciting stations to execute the WGN license to the standard mandated by the Decree; and (2) erroneously imposed upon applicants the burden of demonstrating that they specifically requested a license for a period after 1990. ASCAP seeks acceptance of the Report in all respects.

## II. Decree's Standard

Magistrate Dolinger rejected applicants' argument of fraud or misrepresentation as a basis to rescind their agreements with ASCAP incorporating the terms of the *WGN* license for a period concluding at the end of 1990. Specifically, the Magistrate found the applicants unable to show either (i) a false statement of material fact, or (ii) reasonable reliance, both necessary elements of such a claim under New York and federal common law. Applicants presently object to Magistrate Dolinger's application of New York and federal common-law principles and argue that ASCAP violated the governing Decree's standard. Applicants essentially contend for the first time that, whatever the measure of ASCAP's conduct under common law, the governing Decree

imposes a higher standard of conduct on ASCAP.

In determining whether the Decree imposes a higher standard of conduct, the Court first turns to the Decree itself, for "[a]s a general matter, consent decrees are to be read in accordance with their 'plain meaning' or 'explicit language.' " *U.S. v. ASCAP, In The Matter of Showtime/The Movie Channel, Inc.*, Civ 13–95, Slip Op. at 10, 1989 WL 222654 (S.D.N.Y. Oct. 12, 1989) (citing, *inter alia*, *U.S. v. Atlantic Refining Co.*, 360 U.S. 19, 22–23, 79 S.Ct. 944, 946–47, 3 L.Ed.2d 1054 (1959)). Applicants first cite Section IX, asserting that during the course of ongoing negotiations with ASCAP, they were licensed to perform copyrighted compositions in the AS-CAP repertory.[3] Applicants then argue that they were therefore entitled to the protections of the Decree, including Section IV of the Decree, entitled "General Prohibitions." While ASCAP agrees that Section IX licenses applicants during the course of negotiations, it disputes applicants' contention that negotiations were ongoing and claims to the contrary, that because applicants signed ASCAP interim and extension agreements, they unequivocally elected not to participate in a proceeding separate from *WGN*. ASCAP thereafter argues that its conduct did not violate the Decree. This Court finds that even if applicants were deemed licensees,[4] the Decree does not prohibit ASCAP from asserting in good faith its legal position and options.

██ While Section IV sets forth a host of restrictions on ASCAP's conduct, which applicants believe ASCAP violated, only one provision appears applicable to this case.[5] Section IV(H) enjoins and restrains

---

**3.** Section IX states in pertinent part:
Pending the completion of any such negotiations or proceedings, the applicant shall have the right to use any, some or all of the ASCAP repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provision of Subsection (B) hereof, and to the final order or judgment entered by this Court in such proceeding.

**4.** It is not clear from the presented submissions and affidavits whether some or all of the applicants, if any, were included in the application made by the National Religious Broadcasters

Committee. Drawing all reasonable inferences in favor of the non-moving party, the Court deems applicants licensees under Section IX for purposes of this motion.

**5.** Applicants' citations to additional provisions of the Decree which restrict ASCAP's conduct are inapposite to this case. While recognizing that the Decree seeks to minimize ASCAP's monopoly power in securing inflated rates for its licensees, the Court looks to the enumerated restraints designed to accomplish that purpose.

ASCAP from "[a]sserting or exercising any right or power to restrict from public performance for profit by any licensee of ASCAP any composition in order to exact additional consideration for the performance thereof, or for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition." Applicants argue that ASCAP violated this restriction by threatening infringement litigation. This Court disagrees.

A clear reading of the first clause of this provision [6] indicates the drafters' concern with attempts by ASCAP to exert its leverage to exact higher fees. While this Court also recognizes the potential that ASCAP may exert pressure to obtain inflated rates, it is simply not conceivable that Section IV(H) was intended to deprive ASCAP of the right to apprise applicants of its legal position and options. In threatening litigation, ASCAP was merely apprising applicants' of its belief that if the stations did not sign the *WGN* licenses, it would assert its decreed right to collect fees for its represented artists. Applicants would have this Court believe that the proscribed leverage encompasses any act by ASCAP designed to give it more favorable terms or conditions in its performance licenses. As the party authorized to bring an infringement action, ASCAP must be able to mention this legal option in good faith negotiations; otherwise it would be unfairly handicapped in obtaining for the artists it represents reasonable compensation for the performance of their works.

This Court believes that while the Decree limits ASCAP's right to assert certain rights or influence certain conduct, it does not prevent ASCAP from accusing those whom they believe to be infringers and informing them that they may be sued for their wrongful acts. If the stations are engaged in license negotiations, they can simply defend against the threat by apprising ASCAP that because of the negotiations, they are licensed under Section IX. They may not, however, sign an agreement

with ASCAP and thereafter complain that ASCAP's mention of the possibility of litigation constituted coercion which violated the Decree and rendered the agreement voidable. As Magistrate Dolinger concluded, ASCAP's statement that the stations had "no choice" but to sign the license agreements accurately represented its own belief that there was no other alternative to litigation. This threat, while undoubtedly serving as an incentive to acceptance of a license, did not constitute improper coercion. Applicants, with the advice of counsel, signed the *WGN* licenses because they obviously thought it was a more desirable course than protracted and costly litigation.

Moreover, fear that ASCAP's market leverage enables it to obtain unacceptably inflated fees for its licenses is not a concern in this action because ASCAP did not seek to impose unprecedented fees but merely sought to assess the same charges approved by this Court in the *WGN* proceedings.

Accordingly, the Court concludes that Magistrate Dolinger, applying the appropriate standard, properly denied Applicants' request to rescind their contracts. Applicants are therefore not excused from their *WGN* license agreements which expire on December 31, 1990 and not entitled to bring a separate proceeding under section IX for new or different terms for ASCAP licenses for that period.

### III. Erroneous Burden on Applicants

■ Next, the Magistrate denied jurisdiction over the applicants' request for a reasonable rate determination for a post–1990 license, citing the Decree's precisely defined jurisdictional framework. The Report concludes that applicants "have not met the prerequisites [under the Decree] for invoking the jurisdiction of the rate court for a post–1990 license" because "the stations have not asked ASCAP for a license for a period commencing in 1991." Applicants now argue that the Magistrate erroneously imposed upon them the burden

---

**6.** Clearly, this provision encompasses two unlawful uses of leverage, the latter respecting

synchronization and recording rights having no bearing on this action.

of proving that they expressly requested an ASCAP license beyond 1990.

Section IX(A) of the Decree sets forth the following scheme for a party to obtain a court determination of a reasonable fee:

> Defendant ASCAP shall, upon receipt of a written application for a license for the right of public performance of any, some or all of the compositions in the ASCAP repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days from the date when such application is received by ASCAP, the applicant therefor may forthwith apply to this Court for the determination of a reasonable fee ...

Once an application for a license is received, the applicant is licensed by operation of law for as long as negotiations or any subsequent rate court proceeding continues, subject only to the obligation to pay the retroactive fee ordered by this court. *Id.*

Applicants state that the Decree imposes no burden on a party seeking a license from ASCAP to fix a termination date. ASCAP nonetheless maintains that there is no present controversy between ASCAP and the Salem Media applicants which signed *WGN* licenses. While recognizing that the Decree does not establish the precise requirements of a license application, including the termination date, the Court agrees with the Magistrate that "[i]n essence, the Decree imposes upon the parties a duty to negotiate the specific terms of the license and limits the Court's role to setting the fees for the license that the music user has requested of ASCAP." Report at 22. Therefore, where no discussions have concerned a period for which no applicants sought a license, court intervention is contrary to the spirit of the Decree, which is aimed toward negotiation in the first instance.

Because it is an applicant's burden to request a license by written application under provisions of the Decree, it is only fair to place the burden of raising time periods on the applicant. Having apparently not requested from ASCAP a license for a period commencing in 1991, and having therefore engaged in no negotiations with ASCAP for such a specific license, the applicants have not met the prerequisites for invoking the jurisdiction of this Court for a post–1990 license and the action with respect to a period commencing in 1991 is not yet ripe for court involvement.

### CONCLUSION

For the reasons discussed above, Magistrate Dolinger's report and recommendation is accepted in its entirety.

SO ORDERED.