EDUCATIONAL TESTING
SERVICE, Plaintiff,

v.

John KATZMAN, et al., Defendants.

Civ. No. 85–3768.

United States District Court,
D. New Jersey.

Aug. 29, 1994.

McCarter & English, John McGoldrick, Newark, NJ, Wilmer, Cutler & Pickering, P.C., Thomas P. Olson, Washington, DC, for plaintiff.

Greenberg, Dauber & Epstein, P.C., Newark, NJ, Gordon, Altman, Butowsky, Weitzen, Shalov & Wein, P.C., New York City, for defendants Princeton Review & John Katzman.

### OPINION AND ORDER

CHESLER, United States Magistrate.

### I. *Introduction*

This matter comes before the Court on the motion of plaintiff, Educational Testing Service, to restore the above-captioned case to the active docket list and to compel discovery. This motion was referred to the undersigned by the Honorable Maryanne T. Barry, United States District Judge. Oral argument was heard on February 14, 1994.

### II. *Background*

In December, 1987, the Honorable Maryanne T. Barry entered a Consent Order that resolved a dispute between plaintiff, Educational Testing Service ("ETS"), defendant Princeton Review Incorporated and Princeton Review's president, defendant John Katzman. ETS is a corporation that administers various scholastic tests, most notably the Scholastic Assessment Test (formerly the Scholastic Aptitude Test) ("SAT"). It is common knowledge that a college-bound student's SAT score is one of the most significant criteria by which undergraduate institu-

tions measure his or her potential academic success. Princeton Review is a company that, for a fee, provides students with preparatory classes and exercises designed to maximize their scores on the SAT and Preliminary Scholastic Assessment Test ("PSAT") exams.

The dispute culminating in the 1987 Consent Order arose from ETS's assertion that Princeton Review and Katzman were providing their students with copies of questions from secure SAT forms. The Consent Order permanently enjoined defendants from further infringing ETS's copyrights on its "secure" SAT and Achievement Test questions [1] by using those questions in the preparatory materials defendants distributed to their students. *See* Consent Order ¶¶ 5–6 (attached as Exh. E to Affidavit of David Cooner, Esq.). The Consent Order also provided this Court with continuing jurisdiction to resolve future disputes regarding the applicability of the Order. *See id.* ¶ 12.

On October 13, 1993, the NEW YORK TIMES newspaper published an article that discussed recent changes in the SAT and PSAT examinations, as well as the growing trend among test-takers to enroll in a preparatory program like Princeton Review. Michael Winerip, *Now, P.S.A.T. Means Pressure: Call It Pre–Preliminary Test Anxiety*, N.Y. TIMES, at B6 (Oct. 13, 1993) (attached as Exh. F to Affidavit of David Cooner, Esq.). The article stated in relevant part:

> "We'd get word they were doing Beta testing at XYZ high school and we'd be there," Mr. Katzman said. "We'd do exhaustive debriefing of students and counselors. Every so often, a test booklet found its way out of a classroom. The security isn't extensive for these experimental tests. We'd never take one ourselves, but if someone gave us one, we wouldn't say 'no.'"

*Id.* This article prompted ETS to serve a subpoena duces tecum upon Princeton Review and a notice of deposition upon Katzman, on October 27, 1993, to determine whether defendants were violating the Consent Order. Cooner Aff. ¶ 2 and Exhs. A–B. In response, defendants objected to the discovery requests. *Id.* ¶ 3 and Exh. C. After several conversations with defense counsel, ETS brought the instant motions to restore the above-captioned matter to the active docket list and to compel discovery.

ETS asserts that Katzman's statement to the NEW YORK TIMES suggests defendants are violating the Consent Order. Specifically, ETS claims that defendants may have violated ¶ 7 of the Order, which provides:

> Defendants hereby represent that neither they nor their respective officers, agents, servants or employees or any other persons or entities in active concert or participation with either of them now have any question obtained from any of ETS' secure SAT or Achievement Tests. In the event that any original or copy of any secure SAT or Achievement Test form or question shall at any time hereafter come into the possession, custody, or control of Defendants, their respective officers, agents, servants, employees or other person or entity in active concert or participation with either of them who receive actual notice of this Order, they shall within two business days notify the office of ETS' General Counsel of all such tests or questions, and shall return them within five business days thereafter to ETS at its offices in Lawrence, New Jersey, and shall not communicate to any person besides ETS' officers or employees any information about the contents of such test form or question.

---

**1.** The Consent Order defines a "secure" SAT or Achievement Test form as

> a test form that ETS has produced or published or may hereafter produce or publish other than a test form that has been (i) distributed through the SAT Question-and-Answer Service, (ii) made available to the public pursuant to applicable state law, or (iii) included in a publication (such as "10 SAT's") that has been voluntarily made available to the general public by ETS, the College Entrance Examination

> Board, or another test sponsoring entity, and which form is of the type that ETS customarily registers pursuant to the secure test regulations promulgated under the United States copyright laws.

*See* Consent Order ¶ 1(a) (attached as Exh. E to Affidavit of David Cooner, Esq.). The Consent Order defines a "secure" SAT or Achievement Test question as "one that appears on a secure SAT or Achievement Test form." *See id.* ¶ 1(b).

Consent Order ¶ 7 (attached as Exh. E to Affidavit of David Cooner, Esq.). Defendants counter that Katzman's quote in the NEW YORK TIMES article clearly referred to "field trials," *i.e.,* field test or experimental test questions rather than questions included on an actual SAT examination. Defendants claim that field test questions do not fall within the purview of "secure SAT or Achievement Test questions," and are not prohibited by the Consent Order.

### III. *Discussion*

■ In *United States v. Armour,* the United States Supreme Court provided an instructive discussion of consent orders. Justice Marshall, writing for a plurality, stated:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

*U.S. v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1970)

(footnote omitted). Justice Marshall's language makes clear that once the parties resolve a dispute by entering into a consent order, a court is limited to interpreting that agreement strictly according to its terms, and may not extrapolate from the order even if so doing would better vindicate the order's spirit or purpose. *See also id.* at 683, 91 S.Ct. at 1758. In decisions both preceding and succeeding *Armour,* courts have consistently and carefully observed this well-entrenched principle of law. *See, e.g., Firefighters v. Stotts,* 467 U.S. 561, 574, 104 S.Ct. 2576, 2585–86, 81 L.Ed.2d 483 (1983) (quoting *Armour & Co.,* 402 U.S. at 681–82, 91 S.Ct. at 1757–58); *U.S. v. Atlantic Refining Co.,* 360 U.S. 19, 22–23, 79 S.Ct. 944, 946–47, 3 L.Ed.2d 1054 (1959) (refusing to reinterpret consent decree to limit dividends payable by common-carriers to shipper-owners, despite that such reinterpretation might "more nearly effectuate the basic purpose of the [Acts]," because decree's terms were specific); *Hughes v. U.S.,* 342 U.S. 353, 357, 72 S.Ct. 306, 308, 96 L.Ed. 394 (1952) (denying invitation to reinterpret consent decree, despite likelihood that refusing to do so would frustrate decree's pro-competitive purpose); *Halderman v. Pennhurst State School and Hosp.,* 901 F.2d 311, 319 (3d Cir.1990) ("The agreement memorializes the bargained for positions of the parties and should be strictly construed to preserve those bargained for positions.").

With these principles in mind, the Court now turns its attention to the Consent Order at issue. Before reaching any analysis of paragraph 7 of the Consent Order, the Court must first determine whether field test or experimental questions fall within the definition of secure test forms or questions.

■ The Order's first paragraph explicitly states what are to be considered "secure" test forms. *See supra* note 1 (providing language of Consent Order ¶ 1). Neither subpart of the first paragraph defines a secure test form or secure question to include any material that appears as a field or experimental test form or question. In fact, nowhere does that definitional provision even refer to experimental or field tests. As the

caselaw above makes explicitly clear, the Court can not expand upon the four corners of the Consent Order to construe its first paragraph to include experimental questions.[2] Rather, according to the caselaw, the Court is constrained to reviewing the Consent Order on the assumption that had ETS intended to include field test forms or questions within the definition of secure test forms or questions, it would have expressly provided so in the first paragraph. No such language, however, appears in the first paragraph, or in any other provision of the Consent Order, and thus the Court must conclude that the Consent Order does not cover field test forms or questions. Accordingly, the Court can not find that the article appearing in the October 13, 1993, edition of the NEW YORK TIMES provides a basis for reopening the above-captioned action, because Katzman's statement, even if true, does not suggest a violation of the Consent Order.[3]

## IV. *Conclusion*

For the reasons set forth above, the Court concludes that there is no basis to restore this case to the active calendar or to warrant discovery relating to any possible violation of the Consent Order. Therefore, it is hereby Ordered that plaintiff ETS's motions to restore the above-captioned action to the active docket list and to compel discovery are DENIED.

---

2. Although defendants may have provided some assistance in the drafting of the Consent Order, ETS can not, and does not, seriously dispute that it was primarily responsible for the drafting of the Order. *See* Affidavit of Roger L. Zissu at ¶ 6.

3. In light of the Court's determination, it is clear that ETS's motion to compel discovery must be denied.