WILLIE M., a minor; Jeanette M., a minor; Tom H., a minor; Timothy B., a minor, all by their next friend, Albert Singer, on behalf of themselves and all others similarly situated, Appellees,

v.

James B. HUNT, Jr., Governor, State of North Carolina; Sarah T. Morrow, Secretary, Department of Human Resources, State of North Carolina; A. Craig Phillips, State Superintendent of Public Instruction, State of North Carolina; David Bruton, Chairman, North Carolina State Board of Education; Hosea C. Brower, Director, Samarkand Manor, Division of Youth Services, Department of Human Resources, State of North Carolina; C. B. Hayslett, Director, C. A. Dillon School, Division of Youth Services, Department of Human Resources, State of North Carolina; Field Montgomery, Director, Cherry Hospital, Division of Mental Health, Mental Retardation and Substance Abuse Services, Department of Human Resources, State of North Carolina; Bill J. Martin, District Court Judge, 25th Judicial District, State of North Carolina, Appellants,

and

John A. Williams, State Budget Officer, State of North Carolina; J. A. Porter, Controller, Department of Public Instruction, State of North Carolina; George Bason, District Court Judge, 10th Judicial District, State of North Carolina; Larry T. Black, District Court Judge, 26th Judicial District, State of North Carolina, Defendants.

---

**56**

In re James B. HUNT, Jr., Governor, State of North Carolina; Sarah T. Morrow, Secretary, Department of Human Resources, State of North Carolina; A. Craig Phillips, State Superintendent of Public Instruction, State of North Carolina; David Bruton, Chairman, North Carolina State Board of Education; Hosea C. Brower, Director, Samarkand Manor, Division of Youth Services, Department of Human Resources, State of North Carolina; C. B. Hayslett, Director, C. A. Dillon School, Division of Youth Services, Department of Human Resources, State of North Carolina; Field Montgomery, Director, Cherry Hospital, Division of Mental Health, Mental Retardation and Substance Abuse Services, Department of Human Resources, State of North Carolina; Bill J. Martin, District Court of North Carolina; Judicial District, State of North Carolina, Petitioners.

Nos. 81–1410, 81–1411.

United States Court of Appeals,
Fourth Circuit.

Argued July 14, 1981.

Decided Aug. 11, 1981.

Steven Mansfield Shaber, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., William F. O'Connell, Sp. Deputy Atty. Gen., Reginald L. Watkins, Associate Atty., Raleigh, N. C., on brief), for appellants.

Christine O'Connor Heinberg, Raleigh, N. C. (Deborah Greenblatt, Carolina Legal Assistance for Mental Health, J. Jerome Hartzell, Akins, Mann & Pike, P. A., Melinda Lawrence, Smith, Patterson, Follin, Curtis, James & Harkavy, Sandra Johnson, Johnson & Johnson, Raleigh, N. C., on brief), for appellees.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

This is a class action brought against officials of the State of North Carolina in behalf of a class of minors whose special characteristics—mental, emotional or neurological handicaps, violent and aggressive behavior—allegedly entitled them under the federal constitution and federal and state statutes to special treatment and education by the State that was not being provided. During the pretrial stage, the State conceded essential liability and the parties set about devising a comprehensive settlement to be reflected in a consent decree awarding broad prospective relief. To this end a se-

ries of detailed stipulations concerning the existence, the identity and the rights of the class and the corresponding responsibilities of the defendant officials was entered into by all the parties and approved by the trial judge. The judge then independently ordered the parties to begin compliance with extant stipulations notwithstanding there remained for resolution some final details of the overall settlement.

Unfortunately, there then arose a dispute as to whether the class as certified pursuant to the stipulations included minors who were confined under criminal sentences in various facilities of the North Carolina Department of Correction (not a party to the action nor to the partial consent judgment). The defendant state officials contended that their inclusion was not intended; the plaintiff representatives, that it was. Upon submission of the dispute to the trial judge, he ruled that minors in custody of the Department of Correction were included in the class. The defendants appealed.[1] We reverse.

## I

The individual plaintiffs in this class action, emotionally disturbed children involuntarily committed to various treatment facilities and training schools in North Carolina, brought this class action on behalf of all such children for whom no appropriate treatment program was available. Their claims for declaratory and injunctive relief were based on the Education for All Handicapped Children Act, 20 U.S.C. §§ 1411 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the fifth, eighth, and fourteenth amendments, and North Carolina special education and right to treatment statutes.

During the week prior to scheduled trial, the parties, as indicated, settled the ultimate liability issue in favor of the putative class. In the course of working out the details of a comprehensive overall settle-

ment, they presented to the court a document entitled "Second Set of Stipulations," which the court adopted as findings of fact and conclusions of law to be made part of a formal judgment to be entered later. In this document the parties agreed to jurisdiction and defined the scope of the class, plaintiffs' rights, defendants' obligations, and the basic outlines of the remedy to be awarded.

Subsequently, the parties filed with the court a Third Set of Stipulations and submitted several additional provisions about which they were unable to agree. After a hearing, the court settled the disputed provisions, and adopted these provisions and those agreed on as findings of fact and conclusions of law to be incorporated along with the Second Set of Stipulations into the consent judgment after proper notification of the class. This Third Set of Stipulations outlined the procedures for identifying, notifying and evaluating potential class members and the mechanics for selection and operation of a review panel to be selected by the parties and approved by the court to monitor defendants' compliance with the consent decree.

The class is defined in paragraph (3) of the Second Set of Stipulations as follows:

> [A]ll minors who are citizens of the State of North Carolina and who:
>
> a. now or will in the future suffer from serious emotional, mental or neurological handicaps, which handicaps have been accompanied by behavior which is characterized as violent or assualtive [sic]; and
>
> b. are, or will be in the future, involuntarily institutionalized or otherwise placed in residential programs; and
>
> c. for whom the defendants have not provided appropriate treatment and educational programs.

Subpart (b) above includes:

1. Minors who are mentally ill as defined by N.C.G.S. § 122–36(d)(ii)

---

1. On June 9, 1981, by separate order, we held the district court's order appealable, citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981); *Frederick*

*L. v. Thomas*, 557 F.2d 373, 380–81 (3d Cir. 1977); *Morales v. Turman*, 535 F.2d 864, 867 n.6 (5th Cir. 1976).

and for whom application for evaluation in or admission to a treatment facility is sought pursuant to Article 4 of Chapter 122 of the General Statutes of North Carolina, whether such minor is accepted for evaluation or admitted to such facility or not.

2. Minors referred to an area mental health, mental retardation or substance abuse director or local mental health director pursuant to N.C.G.S. 7A–647(3) for whom residential treatment or placement is recommended.

3. Minors placed in residential programs as a condition of probation pursuant to N.C.G.S. § 7A–649(1).

4. Minors ordered to a professional residential treatment program pursuant to N.C.G.S. § 7A–649(6).

5. Minors committed to a mental health facility or treatment facility pursuant to Article 5A of Chapter 122 of the General Statutes of North Carolina.

6. Minors committed to the custody of the Division of Youth Services pursuant to N.C.G.S. § 7A–649(10).

Further, the stipulations provided that plaintiffs have a right to appropriate treatment and a free appropriate education, arising under the fourteenth amendment and various state and federal statutes. And they provided that the defendants, as state officials charged with administering the relevant statutes, have the obligation to provide this treatment. Paragraph (9) of the Second Set of Stipulations outlines the scope of rights and corresponding obligations:

(A) Each plaintiff shall be provided habilitation, including medical treatment, education, training and care, suited to his needs, which affords him a reasonable chance to acquire and maintain those life skills that enable him to cope as effectively as his own capabilities permit with the demands of his own person and of this environment and to raise the level of his physical, mental and social efficiency. Such habilitation shall create a reasonable expectation of progress toward the goal of independent community living. Defendants do not guarantee each plaintiff a "cure", but do guarantee each plaintiff a program of habilitation which is a good faith effort to accomplish the goals set forth herein.

(B) Each plaintiff shall be provided with the least restrictive, i. e., most normal, living conditions appropriate for that person. Among the factors to be considered in determining the least restrictive living conditions appropriate for the individual are the need to minimize institutionalization and the need to minimize the possibility of harm to the individual and society.

(C) The goal of habilitation shall be to enable each plaintiff, as appropriate for that individual, to move from:

(1) Living and programming segregated from the community to living and programming integrated with the community;

(2) More structured living to less structured living;

(3) Group residences to individual residences; and

(4) Dependent living to independent living.

(D) Each plaintiff shall be provided such placements and services as are actually needed as determined by an individualized habilitation plan rather than such placements and services as are currently available. If placements and services actually needed are not available, the person shall be entitled to have them developed and implemented within a reasonable period. Prior to development and implementation of needed placements and services, the person shall be entitled to placement and services which meet as nearly as possible his actual needs.

In what could be called its administrative provisions, the stipulations provided a detailed threshold procedure for identifying individual members of the class as certified. This procedure was put into operation after the district judge ordered compliance with extant stipulations. During its course sev-

eral local agencies called upon to help in the process identified minors in custody of the Department of Correction and housed in its facilities under criminal sentences. The review panel then raised this question:

> Whether individuals who have otherwise met all criteria for class membership as set forth in Paragraph 3 of the Second Set of Stipulations, but who are at present confined in facilities administered by the Department of Correction, are members of the class?

Disputing the answer, the parties jointly moved the trial court for a ruling. When the judge ruled for inclusion of the disputed group in the class, the defendant state officials appealed.

## II

■ The issue before the district court was the proper construction of a disputed provision in a consent judgment. This was an issue of law whose resolution is freely reviewable by this court. It is also an issue of some uniqueness because of the unique quality of the legal phenomenon we refer to as a "consent judgment." Because we disagree with the able district judge's resolution of the issue and think our disagreement may trace largely to certain inherent conceptual difficulties in the interpretive process, we begin by looking briefly to the essential nature of a consent judgment and to the resulting problems of judicially interpreting its provisions.

Whether in a relatively simple two-party lawsuit seeking only monetary relief or, as here, in a class action seeking broad prospective relief, a consent judgment typically involves an agreement to terminate the litigation upon certain conditions and contingent upon the fulfillment of agreed-upon obligations. From this perspective, it has the aspect of a private contract, for it is based upon an agreement of the parties before any testimony has been taken and involves no judicial factfinding or adjudication beyond the necessary determination of jurisdiction. 3 *Freeman on Judgments* § 1350 (5th ed. 1925); *see generally*, Timberg, *A Primer on Antitrust Consent Judgments and FTC Consent Orders*, 39 Brooklyn L.Rev. 567, 568 (1973).

■ A consent order is more than a contract, though, for it is also a judicial or quasi-judicial act and the judicial imprimatur gives what would otherwise be only a contract the force of a judicial decree.[2] Its contractual aspect, in turn, modifies in one respect its character as a judicial decree: a judgment by consent may not be modified by the court, even while power otherwise exists, without the parties' consent. *Id.* § 1352. This dual nature of a consent judgment therefore shapes the judicial process of interpretation and construction. That process has been analyzed by the Supreme Court:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing pur-

---

**2.** Freeman comments on this aspect of consent orders:

> [T]he judgment is obviously something more than a contract, being rather the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. The rendition and entry of the judgment requires the judicial action of the court, and it is therefore valid though it requires the parties to do what they could not contract to do; neither can it be vacated because the agreement pursuant to which it was entered is not performed. Such a judgment has substantially the same effect as any other judgment rendered in ordinary course, and is entitled to the same presumptions.

*Freeman on Judgments, supra*, § 1350 (footnotes omitted).

poses as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

*United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971) (footnote omitted). *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *United States v. Atlantic Refining Co.*, 360 U.S. 19, 79 S.Ct. 944, 3 L.Ed.2d 1054 (1959); *Hughes v. United States*, 342 U.S. 353, 72 S.Ct. 306, 96 L.Ed. 394 (1952). The Second Circuit has stressed that adherence to this principle is important to the obtaining of consent decrees, for "defendants who sign them should know these will not be stretched beyond their terms." *United States v. ASCAP*, 331 F.2d 117, 123–24 (2d Cir. 1964). A court thus has no authority to expand or contract the judgment's terms to reflect what might have been. *See Artvale, Inc. v. Rugby Fabrics Corp.*, 303 F.2d 283, 284 (2d Cir. 1962).

Obedience to the "four corners" rule of *Armour* does not make improper the use of certain aids to construction where necessary. The circumstances surrounding the formation of the consent order or any technical or specialized meaning understood by the parties for words used in the order may properly inform a court while it yet adheres to the "four corners" rule. *United States v. ITT Continental Baking Co.*, 420 U.S. at 238, 95 S.Ct. at 935.

From all this we take two cardinal principles for interpreting the consent judgment here in issue. First, that its meaning is properly to be sought within the confines of the judicially approved documents express-ing the parties' consent. Second, that its meaning is to be sought in what is there expressed and not in the way it might have been written had the plaintiffs established their full rights in litigation or if it had been written to satisfy the purposes of only one of the parties to it.

■ On this basis, we consider that the meaning is to be sought by looking to the rights and obligations agreed to in the judicially approved stipulations of the parties, to the general nature of the remedy there agreed upon, and to the identity of the named parties, plaintiffs and defendants, who gave their consent to being so bound. For reasons that follow, we conclude, looking to these sources, that the class as certified by consent does not include minors confined for conviction of crime in facilities administered by the North Carolina Department of Correction.

Paragraph 3(b) of the Second Set of Stipulations and the accompanying explanatory subparagraphs contain the critical language in dispute. The language of those provisions defining the class neither expressly includes nor excludes prisoners. The district court looked to that language and concluded that minors in Department of Correction facilities fall "clearly" within the language of paragraph 3(b) because they are "involuntarily institutionalized." While we certainly do not think the point dispositive, we observe that "institutionalization" more commonly denotes commitment for treatment while "incarceration" denotes confinement for punishment. These shades of meaning are certainly not determinative, but "institutionalization" in this context more strongly suggests an orientation toward minors confined for, but not receiving, appropriate *treatment* than it does minors primarily confined for punishment.

The district court apparently focused primarily on the "involuntary" aspect of the institutionalization. Imprisonment clearly fits within that description, but the more critical focus in the Second Set of Stipulations is on the rights and obligations arising from particular kinds of "institutionalization." The explanatory paragraphs appended to paragraph (3) all refer to circumstanc-

es in which minors are under restraint or control of some kind for purposes of treatment. The minors there enumerated are "institutionalized" either because they have come within the jurisdiction of the juvenile court, an agency oriented towards treatment rather than punishment, *see* N.C.Gen. Stat. §§ 7A–516, –646, or because they are mentally ill, or possibly both. Although we agree with the district court that the six explanatory subparagraphs could not properly be read as an exclusive list of included minors, we think it unduly strains logic to conclude that those otherwise intended to be reached by the general term "involuntarily institutionalized" included minors confined by the state for a purpose entirely different from that justifying the state's confinement of the specifically described categories.

The obligations specifically assumed by defendants provide the strongest basis for our conclusion that the agreement did not contemplate inclusion of prisoners in the class. Paragraph (9) defines the goal of the decreed treatment as enabling each plaintiff to move from a segregated, structured, group living situation to an independent and less-structured situation integrated with the community. The habilitation plan for each plaintiff is to be suited to that individual's *needs,* providing the *least restrictive* setting *appropriate* for that person.

These critical obligations, enforceable by the contempt sanction, are manifestly inappropriate when applied to prisoners. Prisoners under the age of eighteen may or may not have the rights enumerated in the complaint and the Second Set of Stipulations. But, as indicated, we must not be led under the guise of interpreting the consent judgment as written into interpreting it as

it might have been written had the controversy been put to litigation. There is simply no possibility that any sensible and significant habilitation plan could be devised which could mandate "the least restrictive environment consistent with" a minor prisoner's "needs and emotional progress" while yet accommodating the state's legitimate penological interests. This, we think, points unmistakably to the conclusion that no such awkwardness was envisioned by the parties in formulating the class definition. And this, in turn, to the interpretation that prisoners were simply not contemplated as members of the class.

Finally we look to the identity of the parties to the consent decree. Again, what is there revealed is not, standing alone, dispositive, but it strongly supports our conclusion. On the plaintiffs' side, it is of some note that no named plaintiff is a member of the disputed group. While this need have had no ultimate significance had the case proceeded to litigation, *but cf. Hill v. Western Electric Co.,* 596 F.2d 99 (4th Cir. 1979), it does bear upon the intended scope of the class as defined by consent.

Of more critical significance is an absence on the defendants' side. Missing from the several agencies and officials carefully and deliberately joined by the plaintiffs as defendants was the most critical one from the standpoint of complying with a consent decree involving prisoners' treatment, the Department of Correction.[3] Again, whatever the substantive or procedural significance of this omission had the litigation proceeded with prisoners included, *see* Fed.R.Civ.P. 19; *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Newman v. Alabama,* 559 F.2d 283 (5th Cir. 1977), the deliberate decision by plaintiffs' counsel not to join this agency as defendant further confirms

---

**3.** On appeal the plaintiffs argue that the omission of this agency has not this significance—that the statutory obligations of certain named agencies run to providing treatment to prisoners, and that in defining the class they were "more concerned with the children to be accorded relief" than with the exact identity of every agency that might be required to participate in providing it. Accepting both of these contentions at face value, they do not address the practical significance we attach to the

omission. It remains inconceivable to us that had prisoners been contemplated, the plaintiffs would have failed to take the easy step of adding to the list of defendants, already including the governor of the state, this obviously critical agency. We are not dealing with its legal indispensability as a party or with the tactical wisdom of the decision not to join it, but simply with its significance to the probable meaning of the class definition.

for us that prisoners were simply not contemplated when the class was being defined by consent.

We conclude by observing that the questions whether minors confined in the state's prison system could or should be included in a class seeking the relief here originally sought, and whether if included they might be entitled to some part of the relief embodied in the consent decree here in issue, are not before us. We address only the question whether that decree as entered contemplated their inclusion. We conclude that it did not and on that basis reverse the order of the district court and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.