689 F.2d 491
 30 Empl. Prac. Dec. P 33,043
 Janet M. PROCTOR, Appellee,
v.
The STATE GOVERNMENT OF NORTH CAROLINA, EXECUTIVE BRANCH;
The Department of Human Resources of the State of North
Carolina; David Flaherty, Secretary of the N.C. Dept. of
Human Resources; The Office of State Personnel of the North
Carolina Department of Administration; I. O. Wilkerson,
Director of the Division of Facility Services, N.C.
Department of Human Resources; Edward Seagroves, Analyst,
Division of Manpower Management; North Carolina Department
of Human Resources, Clark Edwards, Director, Manpower
Management Division, N.C. Dept. of Human Resources; Roy
High, Section Chief, Office of State Personnel of the N.C.
Dept. of Administration, Appellants.
 No. 81-2138.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 5, 1982.
Decided Sept. 16, 1982.
 
 Ann Reed, Sp. Deputy Atty. Gen., Raleigh, N.C. (Robert Hillman, Asst. Atty. Gen., Raleigh, N.C., on brief), for appellant.
 Joyce L. Davis, Raleigh, N.C. (Cynthia M. Currin, Crisp, Davis, Schwentker & Page, Robert A. Hassell, Raleigh, N.C., on brief), for appellee.
 Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and DOUMAR,* District Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Defendants appeal from an order interpreting a consent decree and requiring defendants to comply with the decree as construed by the magistrate.[1] We conclude that the order must be vacated and the case remanded for further proceedings.
 
 I.
 
 2
 Since 1964 plaintiff has been employed as the administrator of the Student Loan Program, a branch of the Division of Facility Services of the North Carolina Department of Human Resources. The Student Loan Program is designed to improve the delivery of health care services to rural communities and to communities where a shortage of health care personnel exists by subsidizing the cost of medical education for persons who agree to practice in areas where citizens are medically underserved. Under the program, funds are lent to medical students who agree to practice a certain medical specialty in a designated community for a minimum specified period. If the borrower fulfills this obligation, the state cancels the indebtedness. Before certain changes were instituted early in 1981, plaintiff was responsible for supervising loan repayments, approving practice locations, and, in general, for directing the student loan program and its staff.
 
 
 3
 In 1975 plaintiff filed a class action against defendants seeking to redress an alleged "pattern and practice of sex discrimination" in promotions, classifications, and treatment by and within the Department of Human Resources, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Class certification was denied, and plaintiff's individual suit was scheduled for trial. However, on December 12, 1980, before trial, the parties agreed on a consent order, and the action was dismissed. By the terms of the consent order, defendants agreed that
 
 
 4
 Plaintiff shall be entitled to continue in her present position with defendant Department of Human Resources ... with the same rights and obligations of any employee of the State of North Carolina similarly situated without fear of retaliatory or discriminatory act on the part of defendants.
 
 
 5
 After the consent order was entered, defendants made two changes in the conditions of plaintiff's employment which she contends are in violation of its terms. First, plaintiff was assigned an additional supervisor with whom she was directed to discuss certain matters before they were presented to higher authority. This action, plaintiff contends, imposed on her an UNPRECEDENTED AND ADDITIONAL LEVEL OF SUPErvision. accordingly, plaintiff argues, the "position" which defendants allegedly guaranteed her without change from the entry of the consent decree was altered in violation of the decree.
 
 
 6
 The second change of which plaintiff complains was the transfer of certain functions previously assigned to plaintiff to another office. In particular, in a memorandum issued to plaintiff on April 7, 1981, she was informed that she would no longer be responsible for approving loan deferments, repayment schedules, turning delinquent accounts over to a collection agency, or practice locations. It is defendants' position that these changes were made in response to a fiscal audit of the Division of Facility Services conducted by the State Auditor's office in the fall of 1980. At that time, the auditor reported certain deficiencies in the internal controls of the student loan program resulting from the concentration of administrative functions in a single administrator, the plaintiff. The auditor did not specifically recommend that plaintiff should be divested of some of her duties in order to correct these deficiencies, but this was the course adopted by defendants.
 
 
 7
 The magistrate found that defendants made the decision to remove some of the functions of plaintiff's job without consulting with plaintiff, although she had asked for and been assured of her participation in formulating a response to the auditor's report. The magistrate also found that this decision had been made by defendants before the consent agreement was signed, but that plaintiff was not informed of this decision until after the decree was filed, or until April, 1981.
 
 
 8
 On June 2, 1981, plaintiff filed a motion seeking enforcement of the consent decree. She alleged that defendants had violated the decree by reducing the responsibilities and duties of her job as they had existed at the time of the consent decree, and by acting against plaintiff in retaliation for the exercise of her civil rights. As relief, plaintiff sought reinstatement of all the duties and responsibilities of her job and a permanent injunction forbidding any changes in her duties.
 
 
 9
 The magistrate found that defendants, by virtue of the consent decree, had guaranteed plaintiff the position she held as of the date of the decree, including the "job duties and responsibilities" held at that time, but that changes in plaintiff's duties may be effectuated "in the exercise of reasonable management discretion" without violating the decree. Although the magistrate's order does not explicitly require defendants to revoke the changes made to her duties and responsibilities after the entry of the consent decree, it does enjoin them from "acts of retaliation toward plaintiff for pressing her Title VII claims" and require them to comply "immediately" with the magistrate's interpretation of the consent decree.
 
 II.
 
 10
 In Willie M. v. Hunt, 657 F.2d 55 (4 Cir. 1981) we had occasion to consider both the nature of a consent judgment and, where a dispute arose as to its meaning, how it should be interpreted. We concluded that there were two cardinal principles for interpreting the consent judgment in that case:
 
 
 11
 First, that its meaning is properly to be sought within the confines of the judicially approved documents expressing the parties' consent. Second, that its meaning is to be sought in what is there expressed and not in the way it might have been written had the plaintiffs established their full rights in litigation or if it had been written to satisfy the purposes of only one of the parties to it.
 
 
 12
 657 F.2d at 60. We think these principles are applicable here.
 
 
 13
 The disputed portion of the consent decree in this case is the provision that plaintiff would "continue in her present position ... without fear of retaliatory or discriminatory act on the part of defendants." Plaintiff contends that by appointing an additional supervisor for her and by shifting to another office various of the duties and responsibilities assigned to her at the time the decree was formulated, defendants altered her "position" in violation of its terms. Defendants, on the other hand, contend that, since it is undisputed that plaintiff's salary and job classification have not been changed since the entry of the decree, her "position" has not been affected and, therefore, that the changes admittedly made in plaintiff's duties and responsibilities are not a violation of the consent decree.
 
 
 14
 We agree with the magistrate that plaintiff's argument regarding the correct interpretation of the term "position" is more persuasive. If defendants had intended to guarantee only that plaintiff would continue at her present salary, it would have been a simple matter so to specify. The choice of a different term, then, implies that something other than a continuation of a certain salary was intended. Further, it seems reasonable to conclude that "position" is simply the more succinct method of expressing not only salary and classification but also the duties and responsibilities assigned to the particular job classification.
 
 
 15
 However, in our view, it does not follow that plaintiff has established a breach of the consent decree by proving the mere fact that changes have been made in her position. Defendants have presented evidence that the changes were made for legitimate business reasons-to correct the deficiencies in the student loan program noted in the state auditor's report. Plaintiff would have it that this evidence is irrelevant, arguing that the consent decree guaranteed her an immunity from any changes in her duties regardless of the reasons for the changes. But this interpretation comports neither with the "four corners" of the decree nor with the circumstances underlying it. Most importantly, Title VII of the Civil Rights Act, under which plaintiff originally brought suit, does not prohibit an employer from taking adverse action against an employee which is justified by a legitimate business reason. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Therefore, plaintiff could not have obtained relief from the implementation of the changes made in her position, if they were made for legitimate business reasons, even if she had successfully litigated her lawsuit. Obviously, then, she did not obtain greater rights by entering into the consent degree, representing a compromise between the parties, in the absence of an explicit guarantee to the contrary.
 
 
 16
 We hold, therefore, that the consent decree is not violated by changes in plaintiff's position decided upon in the exercise of sound managerial discretion and motivated by legitimate business reasons. Only actions taken in retaliation for the filing of the civil rights suit, or motivated by sexual discrimination, would violate the decree. We think that the magistrate was in error in ruling that plaintiff was entitled to be restored to the job duties and responsibilities vested in her on the date of the consent decree without making this critical determination as to whether the changes in her position were justified by legitimate reasons, or not.
 
 
 17
 Plaintiff argues that the magistrate did make this determination since he found as a fact that defendants had entered into the consent decree in "bad faith." This finding stemmed from evidence that defendants had made the decision to reduce plaintiff's responsibilities before the consent agreement was signed, but without informing plaintiff of this decision. The magistrate did not find, either explicitly or implicitly, that the decision to make the changes was itself made in bad faith. But, it is the reason for the changes, not that for entering into the consent agreement, that determines whether the consent decree was violated, even though defendants' bad faith regarding the consent agreement may be evidence of the motivation for changing plaintiff's duties and responsibilities.[2]
 
 
 18
 Plaintiff also suggests that we should find, as a matter of law, that defendants discriminated against plaintiff on account of her sex, or retaliated for plaintiff's filing suit, by changing her duties, in violation of the consent decree. The evidence on this issue is in conflict. Defendants' depositions and affidavits show that the changes were solely in response to the auditor's report. Plaintiff's affidavits suggest that the auditor's report was seized upon as an excuse to discriminate or retaliate against her. Manifestly, if this issue is to be pursued, there must be a plenary hearing in which credibility determinations are made and the facts found. We cannot resolve it on the present record.
 
 
 19
 On remand, the burden of proof should lie as if the case were being litigated under Title VII, since the rights and duties embodied in the consent decree at issue in this case correspond to those included under Title VII. That is, since plaintiff has made a prima facie showing that the decree was violated, defendants must produce sufficient evidence to create a genuine issue of fact as to whether the changes made in plaintiff's position were legitimate and nondiscriminatory. Cf. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).[3] If defendants meet this burden of production, plaintiff must then demonstrate that the proffered reason was not the true reason for the employment decision and that it was more likely that she has been the victim of intentional discrimination or retaliation for asserting her rights. Id. at 255-256, 101 S.Ct. at 1094-95.[4]
 
 
 20
 The order of the magistrate is vacated and the case remanded for further proceedings consistent with this opinion.
 
 
 21
 VACATED AND REMANDED.
 
 
 
 *
 Honorable Robert G. Doumar, United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 The parties consented to the trial of the case by a magistrate, and we have jurisdiction to review the order of the magistrate by virtue of the provisions of 28 U.S.C. § 636(c)(3)
 
 
 [2]
 The magistrate's finding of bad faith on the part of defendants in entering into the consent agreement might also be grounds for setting aside the decree, but plaintiff does not request this relief
 
 
 [3]
 Plaintiff at all times bears the burden of persuasion, but this burden is met, as a matter of law, if defendants fail to adduce evidence to rebut plaintiff's prima facie case. Cf. Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 254, 101 S.Ct. at 1094
 
 
 [4]
 Plaintiff may persuade the magistrate that she is entitled to relief, without adducing additional evidence, by showing that defendants' proffered explanation is incredible, or by bolstering her prima facie case with additional evidence that the changes were in violation of the decree. Id. at 255 n. 10, 101 S.Ct. at 1095 n. 10