Susan F. SCARBOROUGH, in her individual capacity, and as next friend and for the use of Barry L. Scarborough, Jr., a minor, Stephen Scarborough, a minor, and Victoria Scarborough, a minor, and as the administratrix of the estate of the late Barry L. Scarborough, Appellees,

v.

Glenn W. RIDGEWAY, Former Electrical Supervisor, University of Maryland, Appellant,

v.

M.C. DEAN ELECTRICAL CONTRACTING, INC. and Howard L. Rivenbark, Appellees.

Susan F. Scarborough, et al., Amicus Curiae.

No. 82–2156.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1983.

Decided Jan. 17, 1984.

Paul F. Strain, Deputy Atty. Gen., Baltimore, Md. (Jeanne D. Hitchcock, Asst. Atty. Gen., Baltimore, Md., on brief), for appellant.

Stephen J. Hadley, Washington, D.C. (John D. Aldock, Jeffrey C. Martin, Shea & Gardner, Washington, D.C., on brief), as amicus curiae.

William O. Lockwood, Rockville, Md. (Darah P. Kehnemuyi, Washington, D.C., on brief), for appellees.

Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

This appeal presents an issue of contractual indemnification. The district court ruled that the indemnification language of a construction contract between an electrical contractor and the State of Maryland did not require the contractor (and its insurer) to pay a judgment, obtained by the estate and the surviving dependents of a deceased employee of the contractor, against a state employee whose negligence was a proximate cause of the decedent's death.

We reverse.

## I.

Barry Scarborough was an employee of M.C. Dean Electrical Contracting, Inc. (Dean). Dean was employed by the State of Maryland to convert the electrical system

of the University of Maryland, College Park, from one with a 4,200-volt capacity to one with a 13,200-volt capacity. Scarborough died as the result of injuries he suffered on February 12, 1977 while he was engaged in the reconnection of three high-voltage switch cubicles and performance of the phase rotation test on the system.

After Scarborough's death his estate, his wife and his minor children sued Glenn W. Ridgeway, foreman of the electrical shop at the University of Maryland, alleging that Ridgeway's failure to carry out his responsibilities in connection with the Dean contract was a proximate cause of Scarborough's death. Ridgeway filed a third-party complaint against Dean for contractual indemnification and against Dean's electrical foreman, Howard L. Rivenbark, for contribution. The Scarboroughs then obtained a judgment against Ridgeway for $468,249.00 and against Rivenbark for contribution. Because those judgments were not appealed, the sole issue before us is the district court's ruling denying Ridgeway's claim for contractual indemnification from Dean.

Article 23.a of the contract between Dean and the State provided:

a. Responsibility for Damage Claims

The contractor shall indemnify and save harmless and defend *the State and all of its representatives* from all suits, actions, or claims of any character brought on account of any injuries or damages sustained by any person or property in consequence of any work performed under this contract, either by the contractor or any subcontractor, or their employees, agents, or representatives. (Emphasis supplied).

The evidence with respect to the role played by Ridgeway showed that as the electrical foreman at the University, he supervised thirty-four electrical helpers and was responsible for the overall electrical service on the College Park campus. He was the University's liaison with Dean and the University's inspector and overseer. He had informally been designated as such at a preconstruction conference between Dean's representatives and representatives of the University, and he occupied that role as the work under the contract progressed. Stated summarily, he performed the liaison and monitoring function so as to protect the interests and property of the University, to carry out certain inspections, to minimize the interruption to the University's overall electrical service during the performance of the contract and to assure proper access to the University's buildings and equipment by Dean as well as their care.

The day on which Scarborough received his fatal injuries was the day of completion of the Reckord Armory high-voltage switchgear modification. A new high-voltage switch, a cubicle the size of a telephone booth, was added and two existing high-voltage switches were realigned to facilitate the conversion. That work included two important steps: the reconnection of three high-voltage switch cubicles, and the conduct of a phase rotation test to insure that the cables carrying alternating current were connected in the proper sequence so as not to damage the electrical equipment that they fed. Ridgeway was the University's representative who inspected the connection and he monitored the phase rotation test. Indeed he was present on the site in the high-voltage switch room when Scarborough, who was inside a high-voltage cubicle making a connection, came in contact with a live electrical buss bar, and he was the one who pulled the unconscious Scarborough from the cubicle.

While the district court appeared to have no difficulty in concluding that Ridgeway had a connection with the contract and the work performed thereunder, it nonetheless concluded that Ridgeway was not within the group of persons promised indemnity under Article 23.a. It did rule, however, that the contract was not void either as a contract of adhesion or one in violation of Maryland law, Ann.Code of Md., Cts. and Jud.Pro., § 5–305 (1980), prohibiting contractual agreements in the construction trade which purport to indemnify the indemnitee for his sole negligence.

## II.

We approach the decision in this case as one involving a question of law. Thus we reject Dean's argument that the district court's decision as to the meaning of Article 23.a was a finding of fact protected on review by the not-clearly erroneous doctrine. There are factual questions involving the interpretation of an agreement to which the not-clearly erroneous standard applies such as the intent of the parties in employing ambiguous language where the oral and documentary evidence is conflicting. This, however, is not such a case. We have repeatedly held that interpretation of a written contract is a question of law subject to *de novo* appellate review. *See, e.g., Willie M. v. Hunt,* 657 F.2d 55 (4 Cir. 1981); *Courtaulds North American, Inc. v. North Carolina National Bank,* 528 F.2d 802 (4 Cir.1975); *Jersey Insurance Co. v. Heffron,* 242 F.2d 136 (4 Cir.1957). We adhere to that view.

Maryland law, which is applicable here, ascribes to undefined contractual terms their customary or ordinary meaning. *C & H Plumbing and Heating, Inc. v. Employers Mutual Casualty, Inc.,* 264 Md. 510, 287 A.2d 238, 239–41 (1972). By this standard, we do not doubt that Ridgeway was a representative of the state. Both his assigned and actual duties brought him within that category. He was the state's liaison with Dean; it was his assigned duty to inspect Dean's work; and he was present in the job site in the performance of his duties on the morning of the accident which ultimately claimed Scarborough's life. We therefore conclude that Article 23.a afforded indemnity to Ridgeway.

The district court concluded otherwise by what we consider to be an overtechnical, mechanistic construction of the documents evidencing the contract between Maryland and Dean. The district court placed great significance on Article 1.b(1) of the General Conditions which defined "Owner" or "State" as "the legally constituted agency in contracting matters for the State of Maryland, *viz:* the Board of Public Works." That contract provision also stated that the

Board of Public Works "shall be represented in technical aspects of matters under the contract by the Department of General Services." From these two provisions the district court reasoned that because employees of the Department of General Services were assigned duties by the contract, only those state employees assigned duties by the contract are "representatives" of the state.

We see a number of flaws in this logic. First, the phrase that the Board of Public Works "shall be represented in technical aspects of matters under the contract" by the Department of General Services does not suggest that the Department of General Services is the Board's exclusive representative. Indeed the language implies that apart from technical aspects the Board would have other representatives. Next we find nothing in the contract or in the record to support the logical jump that because some representatives are assigned specific duties, the only representatives are those with specific duties under the contract. Third, we do not find that Article 1.b(1) is the only definition of "State" or "Owner." Other provisions of the contract documents equate "Owner" with the University of Maryland. Because "Owner" is synonymous with "State" under Article 1.b(1) of the contract, Ridgeway, as an employee and representative of the University of Maryland, is also a representative of the "State." Finally, the evidence indicates that Ridgeway's responsibilities included various tasks specifically required under the contract to be performed on behalf of the University. Accordingly, we are convinced that Ridgeway fairly meets even the overly restrictive standard of what constitutes a "representative" imposed by the district court.

## III.

We are in agreement with the district court that the contract was not one of adhesion. We also agree that the contract does not violate the proscription of Maryland's § 5–305. That statute purports to invalidate a promise in a construction contract purporting to indemnify a promisee

against liability resulting from his *sole* negligence. *See Mason v. Callas Contractors, Inc.,* 494 F.Supp. 782 (D.Md.1980).

The contract here does not purport to indemnify the state for damages resulting from its sole negligence. Furthermore, the aspect of the litigation which is final established that Scarborough's death resulted from the joint negligence of Ridgeway and Rivenbark, an employee of Dean. Thus the contract is beyond the proscription of the statute.

## IV.

Because of these views, we need not consider the other contentions advanced. On remand the district court will enter judgment against Dean for indemnity and fix the amount thereof.

REVERSED AND REMANDED.