835 F.2d 873
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CITY OF NORFOLK, Plaintiff-Appellee,
v.
ARTHUR J. GALLAGHER & CO. (Illinois), Defendant-Appellant.
 No. 87-1575.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 6, 1987.
Decided Dec. 3, 1987.
 
 James Linwood Sanderlin (Elizabeth F. Edwards, McGuire, Woods, Battle & Boothe on brief) for appellant.
 Harold Phillip Juren, Deputy City Attorney (Philip R. Trapani, City Attorney, Norman A. Thomas, Assistant City Attorney, Molly T. Tami, Assistant City Attorney on brief) for appellee.
 Before WIDENER, SPROUSE, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Arthur J. Gallagher & Co. appeals a judgment for $858,157.38, the increased cost to secure insurance coverage for the City of Norfolk. The district court ruled that Gallagher & Co. had entered into a contract to procure insurance for the City of Norfolk and that under the terms of that contract it had assumed the risk of rising insurance premiums by agreeing to provide the specified insurance coverage in return for a maximum payment regardless of the cost of coverage. We agree with the district court that a binding contract existed between the parties. We hold, however, that the contract became null and void when premium costs exceeded $146,250.00, and we reverse the $878,157.38 judgment in favor of the city.
 
 I.
 
 2
 On October 11, 1983, Gallagher & Co. was awarded a three-year contract to procure excess insurance for the City of Norfolk. On October 19, Gallagher & Co. secured binders for the insurance coverage specified. On March 8, 1984, the city sent Gallagher & Co. a contract dated October 18, 1983, which provided in part:
 
 
 3
 6. PREMIUM PAYMENT. For the first year period of this Agreement, the CITY shall pay GALLAGHER ONE HUNDRED SEVENTEEN THOUSAND DOLLARS ($117,000.00) which shall be used by GALLAGHER to secure all of the excess coverage insurance policies provided for in this Agreement, and affording coverage for the said first year period.
 
 
 4
 In each of the second and third year periods of this Agreement, the CITY shall pay GALLAGHER an amount to be used by GALLAGHER to secure all the excess coverage insurance policies provided for in this Agreement and affording coverage for each such yearly period. Said amount shall be based on a rate of .8182 per each $1,000.00 of the total amount of appropriations for expenditures contained in the Approved Operating Budget of the City of Norfolk, Virginia, for the fiscal years July 1, 1984 to June 30, 1985 (second year period of this Agreement) and July 1, 1985 to June 30, 1986 (third year period of this Agreement); provided, however, that for the purposes of this Agreement and the aforesaid computation, the total amount of appropriations for expenditures shall not include any sums appropriated in said Budgets as expenditures for the Judicial Department, Department of Education and Department of General Government. Provided, further, that in no event shall the aggregate of any increased amount required to secure the said excess insurance policies for such subsequent years exceed twenty-five percent of $117,000.00
 
 
 5
 GALLAGHER shall reimburse to the CITY any portion of the amount payable to it hereunder for each subsequent year of this agreement which is in excess of the actual cost necessary to be used by GALLAGHER to secure said excess insurance policies.
 
 
 6
 In the event that the City Council fails to appropriate sufficient funds to make the necessary payments for any of the aforesaid fiscal years, the contract will not be in default but will be terminated upon the adoption of the budget for the fiscal year in which funds for payment of this contract have been omitted. The CITY shall give GALLAGHER notice of the Council's failure to appropriate the necessary funds but failure to do so will not affect the automatic termination. (Emphasis in original.)
 
 
 7
 John Stancik, President of Gallagher & Co. executed and returned the contract on April 4, 1984, with a letter adding a condition to the language of section 6:
 
 
 8
 Enclosed find contract between Arthur J. Gallagher & Co. and the City of Norfolk to provide the insurance program for three years.
 
 
 9
 Please be advised that the contract has been signed on the condition that if "said excess insurance policies for such subsequent years exceed twenty-five percent of $117,000", the contract is null and void. The City's signing of the contract agrees to this condition.
 
 
 10
 Two copies of the contract are enclosed. Please have both executed, retaining one copy for your files and returning one to us.
 
 
 11
 Should you have any questions, please call me.
 
 
 12
 An ordinance approving the agreement between Gallagher & Co. and the City of Norfolk was submitted to the city council with a copy of the contract but without Stancik's letter. The city council adopted the ordinance on May 1, 1984, and a copy of the ordinance and executed contract was returned to Gallagher & Co. Gallagher & Co. was paid $117,000.00 for the first year's insurance.
 
 
 13
 In August 1984, one of the companies carrying the city's excess insurance cancelled its policy with the city. Due to "dramatic changes in the insurance market," the cost to secure the replacement coverage amounted to $381,377.64 for the year 1984-1985 and $718,348.72 for 1985-1986. The city informed Gallagher & Co. that, under the terms of their agreement, the city considered Gallagher & Co. obligated to secure coverage for the consideration agreed to in the contract. The contract formula provided that the city would pay Gallagher & Co. no more than $117,182.00 to secure insurance for 1984-1985 and $124,387.00 for 1985-1986. Gallagher & Co. responded that, by the terms of Stancik's letter, the contract was null and void because the increase in premiums exceeded twenty-five percent of $117,000.00. Without waiving its claim against Gallagher & Co., the city paid the additional $858,157.38 to procure the replacement insurance.
 
 
 14
 The city, alleging that Gallagher & Co. had breached the three year contract, sued Gallagher & Co. on the contract in the Circuit Court for the City of Norfolk for $858,157.38, the difference between the amount it had agreed to pay Gallagher & Co. to secure insurance under the contract formula and the amount actually paid. Gallagher & Co. removed the case to the United States District Court for the Eastern District of Virginia. Gallagher & Co. argues, first, that no binding contract existed between the parties, and second, that if a contract did exist, it was rendered null and void by the terms of the agreement since the cost of procuring the city's excess insurance coverage exceeded $146,250.00 (one hundred and twenty-five percent of $117,000.00).
 
 
 15
 The case was submitted to the district court on stipulated facts, exhibits, and argument of counsel. On March 11, the district court entered judgment in favor of the City of Norfolk for $858,157.38. Gallagher & Co. appealed.
 
 II.
 
 16
 Gallagher & Co. argues that no binding contract existed between the parties because only the agreement drafted by the city and not the condition contained in Stancik's letter was submitted with the ordinance adopted by the city council. Section 14 of the Norfolk, Virginia City Charter authorizes "the council [to] act only by ordinance or resolution which shall be introduced in writing." Thus, Gallagher & Co. argues that there was no valid acceptance of the contract which included the additional condition because this contract was not properly introduced to and adopted by the city council.
 
 
 17
 We disagree. A binding contract was formed when the city signed and returned the agreement that the city council had approved in the ordinance submitted to it. The condition contained in Stancik's letter was not a counter offer. It did not purport to alter the provisions of the agreement drafted by the city, but merely added language to clarify the meaning of existing terms. See Restatement of Contracts 2d Sec. 39. It is unnecessary to proper acceptance of the contract that such details of interpretation, on which both parties agreed, be separately and explicitly presented to and adopted by the city council.
 
 
 18
 Because the city council acted within its authority under Section 14 of the City Charter and the city signed the contract accepting the additional condition as specified in Stancik's letter, a binding contract existed between the parties. The terms of this contract consisted of the provisions contained in the agreement drafted by the city, supplemented by the condition contained in Stancik's letter.
 
 III.
 
 19
 A binding contract existed between the parties, and we turn therefore to its interpretation. "The interpretation of a written contract is a question of law subject to de novo appellate review." Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir.1984); see Willie M. v. Hunt, 657 F.2d 55, 59 (4th Cir.1981). We think the contract clearly limits the amount of premium Gallagher & Co. had to provide to secure Norfolk's excess insurance.
 
 
 20
 The quoted language of the letter, "if 'said excess insurance policies for such subsequent years exceed twenty-five percent of $117,000', the contract is null and void," is taken from the last sentence of the second paragraph of Section 6 of the agreement. That sentence reads, "Provided further, that in no event shall the aggregate of any increased amount required to secure the said excess insurance policies for such subsequent years exceed twenty-five percent of $117,000.00." This language must be read and interpreted in the context of Section 6 and the agreement as a whole. See Worrie v. Boze, 62 S.E.2d 876, 881 (Va.1951); Carpenter v. Town of City Gate, 40 S.E.2d 268, 271 (Va.1946).
 
 
 21
 The city urges that the "amount required to secure 'said excess insurance policies,' " refers back to the amount that the city was to pay Gallagher & Co. based on the formula in the second sentence of the second paragraph of section 6. Thus the city would interpret the conditional language as rendering the contract null and void only if the amount that the city was required to pay Gallagher & Co., based on the appropriations in the city's operating budget, exceeded $146,250.00 (one hundred and twenty-five percent of $117,000). The city contends that the amount of the insurance premiums necessary to obtain the required insurance has no effect on the agreement.
 
 
 22
 This interpretation tortures the plain language of the condition read in the context of section 6. The "amount required to secure said excess insurance policies" is most obviously read as the cost of those policies or the premium amount. It strains the plain language to read this as the amount of compensation the city would pay Gallagher & Co. under the formula, and "courts are bound to say that the parties intended what the written agreement plainly says." Wilson v. Holyfield, 313 S.E.2d 396, 398 (Va.1984); Meade v. Wallen, 311 S.E.2d 103, 104 (Va.1984).
 
 
 23
 Gallagher & Co.'s job was that of a procurer, not an insurer. The condition in Stancik's letter clarifying the last sentence of paragraph 2 of section 6 is Gallagher & Co.'s only protection against becoming an absolute insurer of the city's insurance costs. The city is amply protected in other ways. The maximum amount that the city was obligated to pay Gallagher & Co. is clearly limited by applying the formula to the appropriations in its operating budget. Paragraph 3 of section 6, which requires Gallagher & Co. to reimburse the city for the amount paid to Gallagher & Co. in excess of the actual cost of the insurance, further limits the city's liability to the premium amount.
 
 
 24
 The conditional language taken from paragraph 2 protects both parties by rendering the contract null and void in the event insurance premiums exceed $146,250. Thus, the city would not be liable for the formula amount should it and the premiums exceed $146,250, nor would Gallagher & Co. be liable for premiums in excess of $146,250 should, as in this case, the city's obligation under the formula be less than that amount.
 
 
 25
 This interpretation is buttressed by the language of the agreement. Gallagher & Co.'s obligation under the contract is defined in section 2(a), "Gallagher's Services," as being "to secure and maintain" excess insurance, and the city's obligation is defined in section 3(a), "City's Obligation," as being "to pay Gallagher." Throughout the agreement, the verb "to secure" is used to denote Gallagher & Co.'s obligation to obtain excess insurance from third party insurers, and the verb "to pay" refers to the city's obligation to provide funds to Gallagher & Co. For example, in section 6, paragraph 1, the "city shall pay ... Gallagher to secure," and likewise the first sentence of paragraph 2 requires that "the city will pay Gallagher to secure" the excess insurance. Gallagher & Co. is thus obligated to secure the excess insurance by paying the premiums using the funds provided by the city.
 
 
 26
 To be consistent with the rest of the agreement, the limitation in the last sentence of the second paragraph of section 6 must be read to refer to the sum Gallagher & Co. would have to pay for third party insurance since it limits the amount required to "secure" the insurance and not the amount the city must "pay" Gallagher & Co.
 
 
 27
 Under the clear language of this condition the contract was rendered null and void when the insurance premiums--the "amount required to secure the said excess insurance policies"--exceeded $146,250. Gallagher & Co. was therefore excused from any further obligation to perform under the contract.
 
 
 28
 For the foregoing reasons, the judgment of the district court is reversed and the case is remanded with directions to enter judgment for Gallagher & Co.
 
 
 29
 REVERSED.