**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THE NEW RIVER VALLEY GREENS;
THE SIERRA CLUB; THE NEW RIVER
VALLEY ENVIRONMENTAL COALITION,
<u>Plaintiffs-Appellants,</u>

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION; FEDERICO F. PENA,
Secretary of Transportation;
FEDERAL HIGHWAY ADMINISTRATION;                     No. 96-2545
RODNEY SLATER, Administrator,
Federal Highway Administration,
<u>Defendants-Appellees,</u>

and

ROBERT E. MARTINEZ, Administrator,
Virginia Department of
Transportation,
<u>Defendant.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-95-1203-R)

Argued: August 12, 1997

Decided: November 17, 1997

Before RUSSELL and HALL, Circuit Judges, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Matthew Dean Pethybridge, PAINTER, KRATMAN,
PETHYBRIDGE, WINDELL & CRENSHAW, Blacksburg, Virginia,
for Appellants. Edward John Shawaker, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON
BRIEF:** Lois J. Schiffer, Assistant Attorney General, John T. Stahr,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I. Chronology

A. Factual

In June 1990, the Virginia Department of Transportation
("VDOT") began planning the construction of a five mile stretch of
highway in the Ellett Valley near Blacksburg, Virginia. As envi-
sioned, the road would relieve local traffic congestion along U.S.
Route 460, provide a more direct route from Roanoke to Blacksburg,
and serve as a test facility for development of a new "intelligent vehi-
cle/highway system." This stretch of highway, nicknamed the "Smart
Road," ultimately would include sensors in the road and possible
magnetic levitation and monitoring systems to assist drivers in vehicle
navigation.

2

Because the highway was to be constructed and financed, in part, with Federal monies, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. , applied to the project. Pursuant to the Act's requirements, VDOT promulgated a Draft Environmental Impact Statement ("DEIS") on August 20, 1991, made it available to the public the next day, and, thereafter, held public hearings on it to receive citizen commentary. On March 5, 1993, VDOT issued the project's Final Environmental Impact Statement ("FEIS") which the Federal Highway Administration ("FHWA") approved on March 26, 1993.

On May 2, 1994, the United States Fish and Wildlife Service ("FWS") informed the FHWA that a certain endangered plant, the smooth coneflower, had been found in the project area. As a result of the discovery, VDOT proposed a 750 foot shift in the final route of some two miles of the Smart Road. On June 5, 1995, the FWS issued a biological opinion concluding that this slight relocation of the road along the new "southern alignment" would pose no threat to the continued well-being of the endangered flower.

In response to this partial redirection of the road, the defendants issued an "Addendum" to the FEIS in September 1995. The Addendum's purpose was to assess whether the altered alignment of the road would produce any significant new environmental repercussions. The Addendum concluded that because the environmental implications of the road's partial realignment were minor, preparation of a Supplemental Environmental Impact Statement ("SEIS") was unnecessary under the NEPA. The Addendum was released on October 5, 1995.

B. Procedural

The plaintiffs, environmental activists in the Blacksburg area, brought this action on November 15, 1995. They alleged, inter alia, that defendants[1] violated the NEPA by preparing the Addendum to

_____

[1] By Order of April 10, 1996, the district court dismissed The Honorable Robert E. Martinez, Virginia Secretary of Transportation, as a party to the suit. The United States Department of Transportation, the FHWA, and their employees remain defendants.

the FEIS in lieu of a SEIS and by originally using inadequate bird, wildlife and plant surveys in drafting the FEIS.

On February 23, 1996, the district court issued a pretrial Order which, among other things, established May 8, 1996 as the court's deadline for the plaintiffs to file any motion to supplement the administrative record and established June 10, 1996 as the deadline for the parties to file any motion for summary judgment. On June 10, 1996, the New River Valley Greens ("Greens") filed a motion for summary judgment and a supporting memorandum of law, attached to which were three affidavits from purported "experts" stating the need for a SEIS. On July 8, 1996, the FHWA moved to strike the affidavits and other exhibits appended to the Greens' summary judgment motion. The court by Order of August 9, 1996 granted the motion to strike, finding that the plaintiffs' attempt to supplement the administrative record with the affidavits was untimely and in violation of the pretrial order.

On October 1, 1996, the district court granted defendants' July 3, 1996 motion for summary judgment[2] as to all counts in the complaint. By the same Order and accompanying Memorandum Opinion, the court denied plaintiffs' motion for summary judgment. Plaintiffs take the instant appeal from that decision.

II. Standards of Review

As to questions of law, including the district court's grant of summary judgment to defendants, review is de novo . Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir. 1984). Summary judgment here issued following the district court's review of an informal agency decision. Thus, the "arbitrary and capricious" standard of district court review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), applies to this court on review of a grant of summary judgment. Overstreet v. Kentucky Central Life Ins. Co., 950 F.2d 931, 938 (4th Cir. 1991); United States v. Carolina Transfer Co., 978 F.2d 832, 835 (4th Cir. 1992). As to factual conclusions reached by the district court, review is for clear error. Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th Cir. 1994).

_____

**2** Defendants had received an extension of time from the court to file the motion.

4

III. The National Environmental Policy Act's Mandates

A. Supplemental Environmental Impact Statement

Section 102 (2)(C) of the NEPA, 42 U.S.C. 4332(2)(C) requires the preparation of Environmental Impact Statements,"in every. . . major Federal action[ ] significantly affecting the quality of the human environment. . . ." Federal regulations interpreting the NEPA state, in pertinent part, that agencies:

> [s]hall prepare supplements to either draft or final environmental impact statements if . . . [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

40 C.F.R. § 1502.9(c)(1) (emphasis added).

Plainly, not every new circumstance is a "significant new circumstance" requiring a SEIS. Rather, as this court has stated, "`the new circumstance must present a seriously different picture of the environmental impact of the proposed project from what was previously envisioned.'" Hughes River Watershed Conservancy v. Glickman, 81 F.3d 437, 443 (4th Cir. 1996) (emphasis added) (quoting Hickory Neighborhood Defense League v. Skinner, 893 F.2d 58, 63 (4th Cir. 1990)). Hughes requires only that agencies continue to take a "hard look" at the environmental consequences of their proposed projects even after preparation of an initial environmental impact statement; the case does not stand for the proposition that any change to a project mandates the preparation of a SEIS. 81 F.3d at 443 (citing Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 374 (1989)).

Here, the route of the Smart Road was shifted a mere 750 feet southward over the course of a two mile stretch in order to accommodate the endangered smooth coneflower. While certain other new circumstances[3] may have resulted from the modified route, they hardly presented the "seriously different picture of the environmental

_____

[3] Plaintiffs cited below as other"significant new circumstances" resulting from the slight modification in the Smart Road route: (1) noise impacts to twenty-nine residences as opposed to the twenty-five cited in the FEIS, (2) the relocation of six families rather than the two mentioned in the FEIS, and (3) an increase from 120 to 140 acres of Agricultural and Forestal land to be acquired for the project.

5

impact" of the project necessary to demand the preparation of a SEIS. Indeed, were the NEPA actually to require a SEIS when a modified project's new environmental impact is patently insignificant, it ". . . would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." Marsh, 490 U.S. at 373.

Because the Smart Road's environmental impact remained virtually unchanged after the road's shifted alignment, the defendants' decision to prepare an Addendum to the FEIS rather than a SEIS was neither arbitrary, capricious nor contrary to the requirements of the NEPA. Consistent with Hughes, supra, the defendants met their obligation to continue to take a "hard look" at the environmental consequences of the Smart Road when they issued the Addendum to the FEIS.

### B. The Adequacy of the Final Environmental Impact Statement

Plaintiffs allege that the defendants' analysis of the Smart Road's impact on birds, wildlife, and plants was arbitrary and capricious because the scientific data incorporated into the FEIS came from atlases and other reference sources several years old at the time. Specifically, with respect to the bird data collected for the FEIS, the Greens argue that data from an atlas was between five and ten years old at the time of the FEIS. Reliance by the defendants on such slightly dated information, however, cannot be said, as a matter of law, to have been irrational, arbitrary or capricious. The plaintiffs adduced no evidence below that local bird populations had changed so drastically between publication of the data in the reference sources and that data's incorporation into the FEIS as to render the data inherently unreliable or archaic.

With respect to wildlife, the plaintiffs do not point to any actual effect on fauna that was not considered in the FEIS. **4** Finally, after

_____

**4** In a November 6, 1991 letter to the defendants, for example, the FWS comments that no further explication of the area's well-known wildlife is required. The letter was incorporated into the FEIS at section VII. Of course, once the existence of the endangered coneflower later was made known to defendants, the Addendum was appended to the FEIS. As well, two alternative routes for the road, alternatives 7 and 10, which might have impacted endangered species of local fish in the Roanoke River, in fact, were not chosen.

6

issuance of the FEIS and after the discovery of the coneflower, no fewer than four additional plant surveys were conducted. These additional plant surveys, likewise, cannot be said to have been inadequate, as a matter of law.

C. Plaintiffs' Untimely Attempt to Supplement
     the Administrative Record

This court defers to the right of a district court to set and enforce the discovery deadlines. Here, the court established May 8, 1996 as the deadline for the parties to submit evidence to supplement the administrative record. The Greens violated the February 23, 1996 scheduling order when they filed the three affidavits at issue on June 10, 1996, more than one month late. For this reason, the district court acted within its sound discretion when it granted defendants' motion to strike this untimely submitted additional evidence.

IV. Conclusion

For the foregoing reasons, we hold that the district court properly granted summary judgment in favor of defendants and against plaintiffs on all NEPA claims. It is so ordered.

AFFIRMED