835 F.2d 874
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
INFOSYSTEMS TECHNOLOGY, INC., Plaintiff-Appellant,
v.
LOGICAL SOFTWARE, INC., Defendant-Appellee.
INFOSYSTEMS TECHNOLOGY, INC., Plaintiff-Appellee,
v.
LOGICAL SOFTWARE, INC., Defendant-Appellant.
INFOSYSTEMS TECHNOLOGY, INC., Plaintiff-Appellant,
v.
LOGICAL SOFTWARE, INC., Defendant-Appellee.
 Nos. 85-1932, 86-3504, 86-3508.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 5, 1987.
Decided Nov. 27, 1987.
 
 Philip Frank Hudock (Paula M. Junghans, Garbis, Marvel & Junghans on brief) for appellant.
 Edward C. Saltzberg (Warner & Stackpole, Ronald L. Early, Lerch, Early, Roseman & Frankel on brief) for appellee.
 Before LEWIS F. POWELL, Jr., Supreme Court Justice (Retired), sitting by designation, JAMES DICKSON PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is a diversity action for breach of contract, tortious interference with contract, and fraud arising out of a computer software licensing agreement between plaintiff Infosystems Technology, Inc. (ITI) and defendant Logical Software, Inc. (LSI). ITI sought $10.5 million in damages, plus preliminary and permanent injunctive relief, and LSI filed a counterclaim for license fees due it under the agreement. The magistrate found for defendant LSI on all of ITI's claims for affirmative relief and awarded LSI judgment on its counterclaim. ITI appeals the judgments against it on the claims for affirmative relief, and LSI appeals the dismissal of its post-verdict motion to alter or amend the judgment. We affirm.
 
 
 2
 * In 1981, LSI, a Massachusetts corporation that develops and
 
 
 3
 distributes computer software, developed a database
 
 
 4
 management system[1] called "LOGIX." In early
 
 
 5
 1982, LSI entered into the first of a series of agreements
 
 
 6
 licensing certain rights to LOGIX to ITI, a Maryland
 
 
 7
 corporation also in the business of developing and
 
 
 8
 distributing computer software. Disputes about the details
 
 
 9
 of this agreement arose almost immediately: ITI filed one
 
 
 10
 breach of contract action in July of 1983, and LSI filed a
 
 
 11
 second in February of 1984. On July 22, 1983, the parties
 
 
 12
 settled the first suit, and executed a major amendment to
 
 
 13
 the licensing agreement. The parties settled the second
 
 
 14
 suit on March 30, 1984, and, as part of the settlement,
 
 
 15
 executed a new contract superseding all prior agreements.
 
 
 16
 This Distribution Agreement of March 30, 1984, and a
 
 
 17
 Settlement Agreement executed the same day comprise the
 
 
 18
 current contractual arrangement between the parties.
 
 
 19
 Under the terms of the contract, LSI granted ITI "the exclusive, non-transferable right to duplicate and distribute LOGIX in binary form" on certain computer series.[2] In paragraph 19 of the Distribution Agreement, LSI agreed "not to solicit or accept (directly or through others) any LOGIX binary licenses on any Computer Series for which ITI has EXCLUSIVE DISTRIBUTION RIGHTS." In Paragraph 11, LSI agreed to provide ITI with "Source Code Maintenance," which was defined to include "all enhancements to LOGIX that are made generally available by Logical Software" and "all 'bug' fixes."[3] The same paragraph, however, contained the following disclaimer: "Logical Software does not warrant that the operation of the LOGIX Software will be uninterrupted or error free, or that all bugs or software defects will be corrected."
 
 
 20
 Shortly after executing the initial agreement with ITI, LSI began to develop a second computer software program which it originally called "Lshell" and later renamed "Softshell." Softshell is a "full screen user interface" program that helps to guide users through the complex commands of database management systems like LOGIX. ITI learned of LSI's development of Softshell in October of 1982, but what happened then is subject to some dispute. ITI claims that it asked LSI to provide it with Softshell under the terms of the distribution agreement, and that LSI refused to do so on the ground that Softshell was not an "enhancement to LOGIX." LSI contends that ITI made no such request. In any event, it is clear that ITI did not assert its claim to Softshell in the litigation between the parties in July of 1983 and February of 1984, and Softshell was not mentioned in the July 22, 1983 amendment to the contract or in either of the agreements executed on March 30, 1984.
 
 
 21
 In November of 1984, ITI filed this action, asserting five claims for relief. First, ITI claimed that LSI's refusal to provide it with Softshell was a breach of its contractual obligation to provide "all enhancements to LOGIX." Second, ITI claimed that LSI had breached its contractual duty not to interfere with ITI's exclusive distribution rights by marketing Softshell and other LOGIX derivatives on computers for which ITI had exclusive distribution rights. Third, ITI alleged that LSI had tortiously interfered with its contract rights by marketing Softshell to ITI's exclusive customers. Fourth, ITI alleged that LSI had fraudulently induced it to enter into the LOGIX licensing agreement by misrepresenting that it would provide ITI with all enhancements to LOGIX. Finally, ITI claimed that LSI had breached its duty to fix "bugs" in the LOGIX program. LSI counterclaimed for license fees due it under the contract.
 
 
 22
 On November 26, 1984, the magistrate entered a "consent order" directing LSI to fix certain bugs in LOGIX in exchange for ITI's payment of accrued royalties. When LSI failed to fix the bugs, ITI moved to have it held in contempt. The magistrate deferred ruling on ITI's contempt motion, as well as its request for preliminary injunctive relief, until trial on the merits. With the consent of the parties, the court then assigned the case to a magistrate for trial, pursuant to 28 U.S.C. Sec. 636(c)(1).
 
 
 23
 On July 9, 1985, after a week-long bench trial, the magistrate ruled that Softshell was not an "enhancement to LOGIX" within the meaning of the contract. From this premise, the court reasoned that LSI's refusal to provide ITI with Softshell was not a breach of the enhancements clause, that LSI's distribution of Softshell was not a breach of ITI's exclusive distribution rights, that LSI's distribution of Softshell did not constitute tortious interference with ITI's contract rights, and that LSI had not fraudulently induced ITI to enter into the contract. The court found that LSI had complied fully with its contractual obligation to fix bugs in LOGIX, but held that it had not complied with bug-fixing terms of the court's November 26 orders; for this reason, the court held LSI in contempt. Finally, the magistrate ruled that LSI was entitled to recover the license fees due it under the contract. The court therefore entered judgment for LSI in the amount of $56,615.49, plus pre-judgment interest and attorney's fees.
 
 
 24
 LSI filed a post-verdict motion, under Fed.R.Civ.P. 59(e) or, in the alternative, Fed.R.Civ.P. 60(b), to alter or amend the judgment insofar as it held LSI in contempt. ITI also filed a Rule 60(b) motion for relief from the judgment. The magistrate dismissed LSI's Rule 59(e) motion because it was not served within the requisite 10-day period, denied LSI's Rule 60(b) motion on the grounds that it sought relief not within the scope of Rule 60(b), and denied ITI's Rule 60(b) motion. ITI here appeals the judgments against it on the breach of contract, tortious interference with contract, and fraud claims, and LSI appeals the dismissal of its Rule 59(e) motion.[4]
 
 II
 
 25
 The issues presented by this appeal involve the interpretation of disputed contract provisions. While a magistrate's interpretation of unambiguous contract language is a ruling of law subject to de novo review on appeal, its interpretation of an ambiguous contract provision is a finding of fact that may be set aside on appeal only if clearly erroneous. See Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir.1984). Whether a particular contract provision is ambiguous, however, is a question of law that may be reviewed de novo on appeal.
 
 
 26
 We address first the issue of whether the program Softshell, which gave rise to this controversy, is an "enhancement to LOGIX" within the meaning of the contract. At the outset, we note that the term "enhancement," which is not defined anywhere in the contract and has no standard meaning in the industry, is ambiguous. The magistrate's interpretation of it is therefore a finding of fact that may be disturbed on appeal only if clearly erroneous. Upon review of the record, we do not believe the magistrate was clearly in error in concluding that the term "enhancement to LOGIX" was not intended to extend to products like Softshell.
 
 
 27
 ITI argues first that Softshell should be considered an enhancement to LOGIX because it improves the use of LOGIX. The magistrate acknowledged that Softshell could improve the operation of LOGIX, when used in conjunction with it. But the court found that the parties intended the term "enhancement to LOGIX" to refer only to improvements made to the product LOGIX itself, not to products that, like Softshell, could be used and marketed quite independently from LOGIX. The record contains substantial evidence to support this conclusion. LSI's president testified that, at the time he signed the contract, he understood the term "enhancement to LOGIX" to refer only to improvements to the program LOGIX itself. Two of ITI's own experts, as well as its president and vice president, testified that whether one product is an "enhancement" of another is essentially a marketing question. Experts on both sides testified that, while Softshell did improve the operation of LOGIX, it could also be used and marketed as a separate product. Indeed, ITI itself sought Softshell for use with a product other than LOGIX--its own database management program called "RUBIX."
 
 
 28
 ITI also argues that Softshell should be considered an enhancement to LOGIX because it contains a substantial amount of LOGIX Source Code. The magistrate found, however, that the amount of common code is not a decisive factor in determining whether one product is an enhancement of another. Once again, there was sufficient evidence to support this conclusion. Dr. Testa, the president of ITI, testified that a device could be an "enhancement to LOGIX" even though it did not contain any LOGIX code, and one of ITI's own experts testified that the amount of common code is not a decisive factor in determining whether one product is an enhancement of another.
 
 
 29
 We also note, as did the magistrate, that ITI failed to mention its claim to Softshell in the pleadings filed in the July 1983 or February 1984 litigation between the parties, in the July 22, 1983 amendment to the contract, in either of the agreements executed on March 30, 1984, or in any other correspondence between the parties from the time ITI first learned of Softshell in 1982 and the time it filed this action. We think this silence significantly reduces the credibility of ITI's claim that the term "enhancement to LOGIX" was intended to extend to products like Softshell. ITI attempts to avoid this problem by alleging that its silence was due to LSI's false representations that Softshell contained no LOGIX code. We are not persuaded by this argument. It is undisputed that ITI was aware, as early as 1982, that Softshell would improve the operation of LOGIX. Under the interpretation of the contract advanced by ITI, this would have entitled ITI to demand Softshell even if it contained no LOGIX code. On this record, we conclude that the magistrate's finding that LOGIX is not an enhancement to LOGIX within the meaning of the contract was not clearly erroneous.
 
 
 30
 After disposing of ITI's claim for breach of the enhancements clause, the magistrate turned to ITI's claims for breach of the exclusive distribution rights provision and for tortious interference with those rights. Each of these claims was based on LSI's distribution of Softshell on computers for which ITI had exclusive distribution rights. The magistrate found for the defendant LSI on both claims, reasoning that if Softshell was not an enhancement to LOGIX, then it was not a product for which ITI had exclusive distribution rights. Implicit in this analysis was a determination that the exclusive distribution rights granted in paragraph 7 of the Distribution Agreement do not extend to all software that contains LOGIX code, but rather are limited to the program LOGIX itself and anything deemed to be an "enhancement to LOGIX."
 
 
 31
 On this score, we think the contract is again ambiguous. Paragraph 7 of the Distribution Agreement simply provides that "LOGICAL SOFTWARE grants to ITI exclusive distribution rights for the LOGIX binary code on the following Computer Series...." Paragraph 3 defines "exclusive distribution rights" as "the exclusive, non-transferable right to duplicate and distribute LOGIX in binary form on a particular COMPUTER SERIES." In our view, this exclusive distribution rights provision is susceptible on its face to two reasonable interpretations--one which includes all software that contains any LOGIX code in binary form, and another which is limited to the binary form version of the program LOGIX itself. The magistrate evidently concluded that the parties intended the provision to have the latter meaning, and we do not think that finding was clearly erroneous.
 
 
 32
 The contract does, of course, contemplate that ITI will develop and distribute software derived from LOGIX source code. Paragraph 17 of the Distribution Agreement grants ITI the right "to modify the LOGIX Source Code in any manner it chooses," and Paragraph 9 requires ITI to pay LSI a certain percentage of the revenues it derived from the license of "LOGIX or any derivative of LOGIX." But the contract contains no provision granting ITI the exclusive right to distribute these LOGIX derivatives, and there is no evidence to suggest that the parties intended the exclusive distribution rights granted in Paragraph 7 to be interpreted so broadly. On this record, we are unable to say that the magistrate was clearly in error in holding that ITI's exclusive distribution rights did not extend to Softshell. As a result, we cannot conclude that the magistrate erred in entering judgment for LSI on ITI's claims for breach of the exclusive distribution rights provisions and for tortious interference with those contract rights.
 
 
 33
 The magistrate next held that ITI had not made out an actionable fraud claim. Because the alleged "fraud" was LSI's representation that Softshell was not an enhancement to LOGIX--a representation which, under the magistrate's interpretation of the contract, was not false--we find no error in this conclusion.
 
 
 34
 We turn next to the magistrate's conclusion that LSI did not breach its contractual duty to fix "bugs" in the LOGIX program. Once again, we note that the relevant contract provisions are ambiguous. Paragraph 11 of the Distribution Agreement requires LSI to provide ITI with "Source Code Maintenance," which is defined to include "all 'bug' fixes." But the same paragraph provides that "Logical Software does not warrant that the operation of the LOGIX Software will be uninterrupted or error free, or that all bugs or software defects will be corrected." Paragraph 6 of the Settlement Agreement requires LSI to provide ITI with a "full written response" to each of some 187 bugs that ITI had identified as impeding the operation of the LOGIX program.
 
 
 35
 The magistrate ruled first that the contract did not obligate LSI to fix every bug in the LOGIX code, but simply to provide ITI with those bug fixes which it did develop. Given the disclaimer in Paragraph 11, this finding seems beyond dispute. The magistrate also held that LSI had satisfied its obligation to provide "full written responses" to all bug reports. Though some of those responses did little more than acknowledge that there was indeed a bug, it is undisputed that LSI did in fact provide a written response to every bug report filed by ITI. On these facts, we cannot conclude that the magistrate was clearly in error in finding that LSI satisfied its obligation to provide a "full written response" to all bug reports.
 
 
 36
 We address, finally, the question of the dismissal of LSI's Rule 59(e) motion. Fed.R.Civ.P. 59(e) provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." The 10-day limit fixed by the rule is regarded as jurisdictional in nature, and the magistrate has no power to extend it. See, e.g., Scola v. Boat Frances, R., Inc., 618 F.2d 147, 154 (1st Cir.1980); Gribble v. Harris, 625 F.2d 1173, 1174 (5th Cir.1980); see generally 11 C. Wright & A. Miller, Federal Practice and Procedure, Civil Sec. 2817 (1973 & Supp.1987). Under Fed.R.Civ.P. 5(b), service by mail is complete upon mailing. The parties agree that the judgment here was entered on July 9, 1985, and that the last day to serve a Rule 59(e) motion was therefore July 19, 1985. They disagree only as to the purely factual question of when this motion was actually mailed.
 
 
 37
 Appellate review of factual disputes concerning jurisdiction is on a clearly erroneous basis. See Thiqpen v. United States, 800 F.2d 393, 397 (4th Cir.1986); 2A J. Moore, J. Lucas, and G. Grotheer Moore's Federal Practice, p 12.07 [2.-1] at 12-49 (2d ed.1987). Under amended Rule 52, this is true even when the findings of fact below are based solely on documentary evidence. See Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). The magistrate found that the motion here was not mailed until after July 19, 1985, and the record contains substantial evidence to support that conclusion. The motion was postmarked July 23, 1985, and received by ITI's lead counsel two days later on July 25. A duplicate copy sent to ITI's local counsel was also postmarked July 23, but not received until July 26. Workers at the post office where the motion was deposited submitted affidavits stating that mail was generally postmarked within a few hours of its deposit, though they could not be certain that this procedure had been followed in this particular case. LSI's only evidence that the motion had been mailed before July 19 was from decidedly biased sources: the certificate of service LSI's counsel attached to the motion indicated that it had been mailed July 18, one day before the expiration of the deadline, and the secretary to LSI's counsel stated that she had deposited the motion in the mailbox on the same day. On this record, we do not think the magistrate's finding that the motion was not timely served can be held clearly erroneous.
 
 III
 
 38
 For the foregoing reasons, we conclude that the magistrate did not err in ruling for defendant LSI on plaintiff's claims for relief, or in dismissing LSI's Rule 59(e) motion. We therefore affirm.
 
 
 39
 AFFIRMED.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 A "database management system" is a program used to store, retrieve, and manipulate data within a computer
 
 
 [2]
 The "Binary Code" version of a computer program is the program's Source Code translated into mechanical instructions that the computer can execute. Most software is distributed to consumers in this form
 A program's "Source Code" is the original set of programming instructions drawn up by its creator. Because Source Code reveals the mechanics of the program, software is rarely distributed to users in this form.
 
 
 [3]
 A "bug" is an unexpected problem in a computer program which prevents the program from functioning properly. A "bug fix" in an adjustment that corrects the bug
 
 
 [4]
 As the parties did not agree to appeal the magistrate's decision to the district court, appeal was taken directly to this court under 28 U.S.C. Sec. 636(c)(3)